## PATRICK DEVER *v.* STEAMBOAT HOPE.

1. JURISDICTION OF STATE COURTS IN MATTERS OF ADMIRALTY. — The State Courts have no jurisdiction to enforce a maritime lien by a proceeding *in rem*.

2. SAME: STATE LEGISLATURES HAVE NO POWER TO CONFER SUCH JURISDICTION. — State legislatures have no authority to create maritime liens: nor can they confer jurisdiction upon a State court, to enforce such a lien by a suit or proceeding *in rem*, as practised in courts of Admiralty. *The Belfast*, 7 Wallace, 624.

3. CONTRACT FOR MATERIALS AND SUPPLIES FURNISHED TO A VESSEL IN HOME PORT NOT A MARITIME LIEN: STATE LEGISLATURES MAY CREATE SUCH LIENS AND PROVIDE REMEDIES FOR ENFORCEMENT. — A maritime lien does not arise in a contract for materials and supplies furnished to a vessel in her home port, and in respect to such contracts it is competent for the States to create such liens as their legislature may deem just and expedient, not amounting to a regulation of commerce, and to prescribe remedies for their enforcement.

4. SAME: SAME: CASE IN JUDGMENT. — Dever sued out on attachment against " Steamer Hope " for work and labor done. Plea, — That the " Steamer Hope " was a vessel navigating the Yazoo and Mississippi rivers, which were navigable by vessels of ten tons burden and upwards from the sea, and that the demand of Dever was cognizable only in the District Courts of the United States. This plea was demurred to. *Held* — That the State Courts had no jurisdiction to enforce the demand by an attachment against the " Steamer Hope."

ERROR to the Circuit Court of Yazoo county. Hon. J. A. P. Campbell, judge.

Attachment by plaintiff in error against defendant in error. The affidavit for attachment states, " that the 'Steamboat Hope,' a steamer in the navigable waters of this State, is justly indebted to Patrick Dever in the sum of $339.15, and prays an attachment." An attachment was issued and levied upon certain cabin furniture of the " Steamer Hope," which was replevied by the captain, upon giving bond with security.

The declaration is as follows : " Patrick Dever, a citizen of the State of Mississippi, plaintiff, by attorney, complains of the 'Steamboat Hope,' a steamer having her home port in the State of Mississippi, and the owners thereof residing in said State, defendant in attachment. "For that, whereas, etc., defendant was indebted to plaintiff in the sum of, etc., for labor and service done and performed in and upon said 'Steamboat Hope,' in repairing the same, and being so indebted, promised to pay when requested, etc., etc."

Plea, " that this court ought not to have or take further cognizance of this suit, because the defendant *is* a vessel navigating the Yazoo and Mississippi rivers, and which said rivers are navigable by vessels of ten tons burden and upwards from the sea ; and that the demand of the plaintiff, if any he has, is cognizable only in and by the District Courts of the United States, which have exclusive original jurisdiction of all civil causes of admiralty and maritime jurisdiction, where the seizures are made on waters navigable from the sea by vessels of ten or more tons burden."

To this plea a demurrer was filed, which was overruled, and

plaintiff in error declining to reply, judgment final against him. Writ of error to this court.

*Wiley P. Harris,* for plaintiff in error, contended — That material men have no maritime lien on a vessel supplied with materials in her home port. That a vessel engaged exclusively in the domestic commerce of a State, although plying in public navigable waters, is not within the admiralty jurisdiction of the United States, and contracts made with her or her owners or officers are not maritime contracts. 2 Parsons on Maritime Law, 642; *Allen v. Newberry,* 21 How. 244; *McGuire* v. *Card,* 21 ib. 248.

*Miles & Epperson,* for defendant in error, cited *Hine* v. *Trever,* 4 Wallace, 555, 561; 12 Minnesota Rep. 465.

SHACKELFORD, C. J., delivered the opinion of the court.

This was an attachment issued by the plaintiff in error against the defendant, under the provisions of the act entitled "An act to provide a remedy by attachment against ships, steamboats, and other water craft." Chapter 53 of Rev. Code, p. 383.

Plaintiff in error made the affidavit required by art. 2 of said act, in which he stated that "the 'Steamboat Hope,' a steamer in the navigable waters of this State," was indebted to him in the sum of $339.15.

Plaintiff in error executed the requisite bond under the provisions of art. 2, and the attachment was sued out, and made returnable to the Circuit Court of Yazoo county; the sheriff attached certain furniture and other chattels in and belonging to the boat, which were replevied by Thomas Metzler, the captain of said "Steamer Hope," as required by art. 3 of said act.

At the return term thereof, the plaintiff in error filed his declaration on the account stated to be due him by the boat; stating that he is a citizen of the State of Mississippi, and that "the home port of the said defendant (the 'Steamer Hope')

is in this State," and that the owners of said boat reside in Mississippi; it is further alleged that the cause of action is for work and labor performed by plaintiff in error upon said boat, in repairing the same, etc.

To this declaration the defendant filed a plea to the jurisdiction of the court, alleging that the defendant is a vessel navigating the Yazoo and Mississippi rivers, which are navigable from the sea by vessels of ten tons burden; and that the demand of the plaintiff, if any, is cognizable in the District Court of the United States, which has exclusive jurisdiction of all civil causes of admiralty and maritime jurisdiction where seizures are made in waters which are navigable from the sea by vessels of ten tons burden.

To this plea there was a demurrer, which was overruled; and the plaintiff declining to reply, judgment final was rendered for the defendant, and this writ of error is taken to that judgment.

The errors assigned are, that " the court erred in overruling the demurrer, and in rendering judgment for the defendant." .

The only question for our consideration in this case is, whether the Circuit Court of Yazoo county had jurisdiction of the subject-matter of the action.

The objection to the jurisdiction is, that the case, as developed by the pleadings, was one exclusively of admiralty jurisdiction for the District Court of the United States for the District of Mississippi.

Counsel for the defendant in error, in support of the proposition, refer us to the decisions of the Supreme Court of the United States, in the cases of *The Moses Taylor*, 4 Wallace S. C. Rep. p. 411, and *The Hine* v. *Trevor*, ib. p. 555.

On the other hand, counsel for plaintiff in error cites the cases of *Allen* v. *Newberry*, 21 How. S. C. Rep. p. 244, and *McGuire* v. *Card*, same volume, p. 248, as conclusive in favor of the jurisdiction of the Circuit Court below; and insists that unless the plea of the defendant in error contained an allegation that the " Steamer Hope " was engaged in the *United States*

*trade*, that the demurrer should have been sustained to the plea of defendant in error to the jurisdiction.

The affidavit of plaintiff in error, asking for the attachment issued in the case under consideration, only contained an allegation that the "Steamer Hope" was indebted to him in the sum of $339.15, and that the vessel "was in the navigable waters of the State of Mississippi."

The authority for the proceedings in this case is art. 1 of the "Water Craft" law above referred to, which provides that "where any person shall have any cause of action against the owner, captain, master, supercargo, or other person in charge of any ship, brig, schooner, sloop, steamboat, etc., in any of the navigable waters of this State, or navigating the rivers or seas in or adjacent to this State, for or on account of any such water craft, or the business in which said craft may be employed, it shall be lawful to prosecute the same against such water craft by the name thereof, or by such description as will enable the officer executing the writ to identify the same."

This statute gives the remedy to a creditor, whether the boat is engaged in trade exclusively between ports in the same State or ports in different States.

The plaintiff in error, in his declaration, alleges that the home port of the "Steamer Hope" is in the State of Mississippi. This allegation is equivalent to an allegation that the owners reside in this State, and nothing more, although counsel seems to consider it as sufficient to give the court jurisdiction, as the allegation was intended to show that the steamer was engaged exclusively in domestic trade, or trade and navigation, between ports in the State, and on waters entirely within the State.

This is an inference which, we think, cannot be legitimately drawn from the facts set forth in the affidavit and declaration of plaintiff in error.

If the jurisdiction of the court depended upon the fact that the steamer was engaged exclusively in trade within and upon the waters of the State, this the affidavit of plaintiff in error should have shown. Because the Yazoo river is a navigable stream entirely within the State, it does not follow that she

was engaged in trade and navigation upon said river, or that the termini of her trips were ports in this State.

It is evident from the affidavit of plaintiff in error, that he relied upon the provisions of art. 1 of the statute above referred to, for the legality of his proceedings, without reference to the trade she was engaged in.

Unless the jurisdiction of the court can be sustained under the affidavit of plaintiff in error, and the provisions of art. 1 of the act in question, the allegation in the declaration, that the "home port" of the defendant in error is in this State, cannot strengthen his case, or give the court jurisdiction, if it had none at the commencement of his suit.

We are therefore to consider the question of jurisdiction solely upon the allegation in the affidavit of plaintiff in error, in connection with the provisions of art. 1 of the statute above quoted.

In the case of *Allen* v. *Newberry*, the Supreme Court of the United States held, that a contract of affreightment between ports and places within the same State was not the subject of admiralty jurisdiction, as it concerned purely the internal State trade, and that the jurisdiction belonged to the courts of the State. This doctrine was affirmed at the same term of the court, in the case of *McGuire* v. *Card.*

The doctrine announced in these cases cannot be applied to the case under consideration, if it were true that the defendant in error was engaged exclusively in the domestic trade, or between ports in this State. The doctrine in these cases has been overruled in the case of *The Belfast*, 7 Wallace S. C. Rep. p. 624.

In the opinion delivered by Justice Clifford in that case, the case of *Allen* v. *Newberry* is reviewed. He says : "Remarks, it is conceded, are found in the opinion of the court in the case of *Allen* v. *Newberry* inconsistent with these views ; but they were not necessary to that decision, as the contract in that case was for the transportation of goods on one of the Western lakes, where the jurisdiction in admiralty *is restricted,* by an Act of Congress, to steamboats and other vessels . . . . employed

in the business of commerce and navigation between ports and places in different States and Territories;" referring to the *Hine* v. *Trever*, 4 Wallace, 555.

In the case of *The Belfast*, the owners of *The Belfast* excepted to the jurisdiction of the Circuit Court of the State of Alabama, and alleged that the steamer, at the time the cotton was shipped, was duly enrolled and licensed under the laws of the United States; that she was then and there engaged in commerce and navigation between the city of Columbus, in the State of Mississippi, and the city of Mobile, in the State of Alabama; and that the cotton described in the libel was lost on her trip from the former city to the port of destination.

The cotton was shipped from a port in the State of Alabama to the city of Mobile, in one of the shipments mentioned in the libel; but all the cases were to be decided together. The counsel for the libellants contended, that inasmuch as the cotton was shipped in one of the cases from ports in the same State, the State court had jurisdiction of that case impliedly, admitting the jurisdiction of the court would not attach if the cotton had been shipped from a port in a different State to the city of Mobile.

The court, after an elaborate review of most of the decisions of the Supreme Court of the United States involving questions of jurisdiction in cases of admiralty, held, that the State court in Alabama had no jurisdiction of the cases, including the one where the cotton was shipped in Alabama; and that the exclusive original cognizance of all civil cases of admiralty and maritime jurisdiction is, by the terms of the ninth section of the Judiciary Act of 1789, conferred upon the District Courts of the United States, "saving to the suitors, in all cases, the rights of a common-law remedy, when the common law is competent to give it, which the suitor can pursue in the State or Circuit Court of the United States. Common-law remedies are not applicable to enforce a maritime lien by a proceeding *in rem*, and consequently the original jurisdiction to infer such a lien by that mode of proceeding is exclusive in the District Courts;" citing *The Moses Taylor*, 4 Wallace, 411.

46

Nothing is said about concurrent jurisdiction in a State court or any other court.

Counsel for plaintiff in error insists, that the plea of defendant in error " does not contain the necessary allegations, to oust the Circuit Court of Yazoo county of jurisdiction." It was incumbent upon plaintiff in error to show, by the proceedings in his cause, that the court had jurisdiction of the subject-matter of the action, and if it was one of admiralty or maritime jurisdiction for the District Court of the United States, it was not necessary to oust the court of jurisdiction for the defendant in error to plead to the jurisdiction, or to file any other plea, showing reasons why the case should be dismissed. The case could have been dismissed on motion of counsel, or even upon the court's own motion. 8 Mass. Rep. p. 87 ; 12 ib. p. 367, and cases cited.

Admitting that we have misapprehended the rule of pleading in such cases, and that the doctrine contended for by counsel is correct, we are of the opinion that the plea to the jurisdiction was sufficient.

Under the rulings of the Supreme Court of the United States in the cases of *The Moses Taylor, The Hine,* and *The Belfast,* upon the question of jurisdiction, it was only necessary to show that the attachment or seizure was made in the navigable waters of the United States, navigable from the sea by vessels of ten tons burden, or upwards. Navigable rivers which empty into the sea, or into the gulfs and bays which form part of the sea, are but arms of the sea, and are as much within admiralty and maritime jurisdiction of the United States as the sea itself.

Another view taken of this point, by counsel for plaintiff in error, is, that "material men" [furnishers of supplies, repairs, etc.] have no maritime lien on a vessel so supplied in her home port; and further, that a vessel engaged exclusively in the *domestic commerce of a State,* although plying in public navigable waters, is not within the admiralty jurisdiction of the United States ; and contracts made with her, or her owners or officers, are not maritime contracts.

The first branch of this proposition is correct ; but material

men who furnish supplies or materials for a vessel in a foreign port, or in a port other than a port of the State where the vessel belongs, have a maritime lien on the vessel, as a security for the payment of the price of all such materials and supplies.

They have such a lien, because, upon the principles of the maritime law, such materials and supplies are presumed to be furnished on the credit of the vessel, and consequently they are entitled to proceed *in rem* in the admiralty courts to enforce the lien. *The General Smith*, 4 Wheaton, p. 438 ; *The Belfast*, 7 Wallace S. C. Rep. p. 624.

The second branch of the proposition of counsel (quoted) we have shown to be untenable.

The record does not disclose any fact showing that the cause of action, the subject-matter of the attachment, was or was not created or contracted with the owners of the defendant in error at the alleged " home port " of the vessel.

There is nothing to show where the indebtness was incurred.

The " home port " of the defendant in error, at the time of the creation of the indebtness sued on, might have been in any other State, nothing in the record appearing to the contray.

The allegation of the plaintiff in error in his declaration relative to the " home port " of the defendant in error, only applied to the *status* of the party defendant at the time of filing the declaration.

The record does not disclose any fact tending to establish the presumption raised by counsel, that the contract for labor and materials furnished was performed or executed at the " home port " of the defendant in error when she was attached.

Shipwrights who have taken a vessel into their possession to repair (if a domestic one), or have worked upon it without retaining it in their possession as a security for their claims, and have let it pass out of their possession, have no claim or lien upon the ship itself, unless given by statute law. 4 Wheaton's S. C. Rep. p. 438.

There being no statute in this State creating a *specific lien* upon vessels for labor performed or materials furnished by shipwrights or material men, at the " home port " of vessels, and

if they permit them to pass out of their possession without getting their pay, they have to resort to their common-law remedy.

The plaintiff in error should have pursued his common-law remedy, in the Circuit Court of the United States, or in the State court, against the *owners* of the steamer, if he had performed the labor and furnished the materials for the boat at her "home port" in this State, the owners of the defendant in error being residents of the State at the time plaintiff in error sued out his attachment.

State legislatures have no authority to create a maritime lien, nor can they confer any jurisdiction upon a State court to enforce such lien, by suit or proceeding *in rem,* as practised in the admiralty courts of the United States. *The Moses Taylor* 4 Wall. S. C. Rep. p. 411; *Hine* v. *Trevor,* ib. p. 555; *The Belfast,* 7 Wallace S. C. Rep. p. 624.

The subject-matter of the controversy in the cause under consideration being within the admiralty and maritime jurisdiction of the District Court of the United States, it necessarily follows that the court below had no jurisdiction of the case as prosecuted by plaintiff in error, the proceedings being purely *in rem* and in the nature and with all the incidents of a suit in admiralty.

Therefore we are forced to the conclusion, that the court below did not err in overruling plaintiff in error's demurrer to the plea of defendant in error to the jurisdiction, and in dismissing the case.

Let the judgment be affirmed.