HENRY D. BROOKMAN et al., Appellants, *v.* HENRY F. HAMILL et al., Respondents.

Any State legislation providing for the enforcement of a *maritime* claim or contract, except by common-law remedy, infringes upon the exclusive jurisdiction of the federal courts, and is in violation of the federal Constitution.

But as to claims, not in their nature maritime, against the owners of vessels, the State jurisdiction is complete, and there is no restriction upon its power to prescribe forms and methods of proceeding to enforce them.

It is not material to the question of constitutionality, in any particular case, whether the admiralty courts do or do not proceed in such case *in rem*, but the test is the nature of the claim, whether maritime or otherwise.

Ships and vessels, when within the territorial jurisdiction of the States, are not exempt from the operation of their laws for the collection of claims, or the creation or enforcement of liens *not founded upon maritime contracts*

*or torts ;* but as to the latter, the jurisdiction of the admiralty is, except as to mere common-law remedies, and with the reservation as to inland lakes and rivers contained in the act of congress of 1845, exclusive in all cases, as well where they proceed only *in personam* as *in rem*,—*Held*, accordingly, that claims for wharfage of a sea-going vessel are maritime in their nature, and the act of 1862 (chap. 482 of Laws of 1862), therefore, in so far as it provides for attachments and other proceedings *in rem* against vessels for such claims, is void; and a bond given to discharge such an attachment cannot be enforced.

*In re Steamboat Josephine* (39 N. Y., 19), explained and limited.

Where in an action upon a contract, it appears from the facts stated in the case, that the obligation was void, having been given to a public officer in a void proceeding, a judgment for the plaintiff will be reversed by this court, though no exceptions on those grounds were taken by the defendant on the trial.

(Argued April 12, and decided May 17, 1871.)

APPEAL from a judgment of the Supreme Court, at General Term, in the first district, reversing a judgment in favor of the plaintiffs, entered on the verdict of a jury.

The action was brought upon a bond given to discharge a vessel from an attachment issued in pursuance of the " act to provide for the collection of demands against ships and vessels," passed April 24, 1862.

The claim of the attaching creditor was for wharfage of the vessel at the port of New York. It is admitted by the pleadings that she was a sea-going or ocean-bound vessel.

The question litigated at the trial was, whether the plaintiff was entitled to recover double wharfage under the provisions of section two of chapter 254 of the Laws of 1860.

No point was raised at the trial in respect to the constitutionality of the attachment law of 1862, or the jurisdiction of the officer issuing the attachment.

There was no motion for a new trial at Special Term. An appeal from the judgment was taken to the General Term, on a case containing exceptions.

At the General Term the judgment was reversed on the ground of the unconstitutionality of the act of 1862, on the authority of the case of *Bird* v. *The Steamboat Josephine* (39 N. Y., 19).

*E. Terry*, for the appellants.

*W. J. Foster*, for the respondents.

RAPALLO, J.   The principle upon which the decision of this court, in the case of *Bird* v. *The Steamboat Josephine*, is founded, appears, from the opinion of the Supreme Court in the first district, in the case of *Ferran* v. *Hosford*, which was followed in the present case, to have been somewhat misapprehended.   It is stated, in the opinion referred to, that this court decided, in the case of *The Josephine*, " that a statute passed by a State legislature, conferring the right to a lien on a vessel, and to proceed against her by name, *whatever may be the nature of the claim*, is unconstitutional and void ;" and " that, if the proceeding is *in rem*, and against the vessel by name, this is conclusive, and, *per se*, shows that it is one of maritime jurisdiction, and exclusively within the jurisdiction of the district courts of the United States."

As this interpretation of the decision is liable to mislead, it is proper that it should be corrected.

By reference to the opinion of MASON, J. (39 N. Y., 25), it will be seen that the nature of the claim is the essential point upon which the constitutional question turns.   He says : " The statute itself is unconstitutional *if this is to be regarded as a maritime contract*, of which a court of admiralty has jurisdiction."   The form of proceeding under the statute does not and cannot determine whether the claim which is sought to be enforced thereby is or is not maritime in its nature.   It was necessary to examine the form of proceeding, not for the purpose of determining the character of the claim, but of ascertaining whether the attachment proceeding was or was not a common-law remedy ; for, unless it was such, the saving clause in the act of 1789 did not preserve the right to pursue it in a State tribunal in a maritime case.

The invalidity of these attachments laws, when employed to enforce maritime claims, does not result merely from the form of proceeding which they prescribe, but from the fact that the States have, by the Constitution, granted to the judicial

department of the federal government jurisdiction in all cases of admiralty and maritime jurisdiction, and that congress (as it had power to do) has, by the act of 1789 (1 Stat. at Large, p. 76, § 9), declared the federal jurisdiction in civil causes of that character exclusive, and vested it in the district courts of the United States. This act absolutely divests the State tribunals of jurisdiction to enforce maritime claims or contracts, subject only to the proviso which saves to suitors the right in such cases to pursue in the State courts such common-law remedies as the common law is competent to give.

It is impossible to escape the conclusion that any State law which attempts to provide for the enforcement of a maritime claim or contract by any but a common-law remedy infringes upon the exclusive jurisdiction of the federal courts over that class of cases, and is as clear a violation of the federal compact as would be a law providing for the enforcement by State tribunals of the rights of patentees or any other description of claims exclusively cognizable in the courts of the United States. But it is equally plain, that, as to claims, not in their nature maritime, against the owners of vessels, the State jurisdiction is unimpaired, and that, consequently, the act of 1789 imposes no restriction upon the power of the States to prescribe such forms of proceeding for their collection as they may deem appropriate. Nor are ships and vessels, when within the territorial jurisdiction of the States, in any manner exempted from the operation of their laws for the collection of claims, or the creation or enforcement of liens, not founded upon maritime contracts or torts.

To test the validity of these attachment laws, in their operation upon particular cases, two questions must be determined: First. Is the claim of the attaching creditor, to enforce which the statute undertakes to give a lien and attachment, a *maritime claim*, cognizable in the courts of admiralty? Secondly. Is the remedy given by the State law one which the common law did not give? An answer to either of them in the negative, leaves their jurisdiction unaffected.

It follows, that, in so far as these State laws create liens and provide remedies for claims not maritime, and over which the courts of admiralty consequently have no jurisdiction, they are perfectly valid and operative.

We held, in the case of *Sheppard* v. *Steele*, decided in October, 1870 (*ante*, p. 52), that the claim of the builder of a vessel could be enforced pursuant to the State attachment law of 1862, for the reason that a contract for the building of a vessel had been held by the Supreme Court of the United States not to be a maritime contract, but a contract "made on land, to be performed on land," and over which the courts of admiralty could not exercise jurisdiction in any form. (*People's Ferry Co.* v. *Beers*, 20 How., 393, 402.) So, also, in cases of repairs and supplies furnished to vessels engaged wholly in running between different points within the same State. (*Maguire* v. *Card*, 21 How., 248.) And, in cases of contracts for transportation on the lakes, from one point to another, within the same State (*Allen* v. *Newberry*, 21 How. U. S., 245), the same high tribunal decided that the contract was not maritime, and that the federal courts were therefore entirely without jurisdiction therein. If so, they could not proceed either against the vessel *in rem*, or the owner *in personam ;* and no State law could confer such power upon them. And those cases refute the idea which at one time prevailed, that the laws of the States giving liens could afford a foundation for proceedings in admiralty. The exercise by the States, therefore, of jurisdiction in that class of cases, under any form of proceeding whatever, could not come in conflict with the powers of the federal judiciary, for it had none. It is true that the doctrine of the cases of *Allen* v. *Newberry* and *Maguire* v. *Card* has been since denied in the case of *The Belfast* (7 Wall). But, in so far as those cases recognize jurisdiction in the States to enforce the contracts therein referred to by any other than common-law remedies, such recognition must be based on the supposed absence of jurisdiction in admiralty over such contracts.

There is another class of cases in which the State laws are operative, but for a different reason, viz., claims against ves-

sels navigating the lakes and rivers connecting therewith. The jurisdiction of the States over these cases is protected by the act of congress of February 26, 1845, which expressly saves to suitors not only their concurrent remedies at common-law, but also any concurrent remedy which may be given therein by the State laws where the vessel is employed.

The point chiefly discussed in the case of *The Josephine* was not the exclusive character of the original jurisdiction of the district courts over claims of a maritime nature; for that was conceded to be established by the cases of *The Moses Taylor* (4 Wall., 411), and *Hine* v. *Trevor* (id., 555). But an endeavor was made to distinguish the case of *The Josephine* from those cases, on the ground that *The Josephine* was attached for supplies furnished in her home port, and that the courts of the United States did not recognize a maritime lien for supplies to domestic vessels.

The question of maritime lien, and of the kind of process which the courts of admiralty would issue, was attempted to be confounded with the question of admiralty jurisdiction; and various *dicta* which had fallen from some of the justices of the Supreme Court, before the critical examination given to the jurisdictional question in the cases of *The Moses Taylor* and *The Hine* had been made, were cited in support of the proposition that, in maritime cases in which the courts of admiralty refused process *in rem*, the parties were at liberty to resort to State laws giving that form of remedy.

When process *in rem* is refused by the courts of the United States on the ground of a want of jurisdiction over the cause of action, as in the cases of *People's Ferry Co.* v. *Beers*, *Allen* v. *Newberry*, and *Maguire* v. *Card*, the correctness of the remark made by Mr. Justice NELSON, in the last-mentioned case, to the effect that such cases must be left to the State tribunals, cannot be questioned. Nor can there be a doubt of the accuracy of the incidental remark of Mr. Justice CLIFFORD, in *The Belfast* (7 Wall., 624, 645), as applied to like cases, viz., that a maritime lien does not arise for materials and supplies furnished to a vessel in her home port, and that

it is competent for the States to create liens therefor, and provide for their enforcement. That observation must be understood as applicable to cases in which the contract is not maritime, and the admiralty courts consequently have no jurisdiction; for the learned justice expressly states that the cases to which he refers fall within the same category with contracts for ship-building, which, he says, are not maritime contracts. He expressly denies the power of the States to create or enforce maritime liens (p. 644). No point as to materials or supplies was involved in the case of *The Belfast.* The attachment was on a contract of affreightment, and the State attachment law was held void.

The whole tenor of the opinion of the learned justice shows that he should not be understood as saying that, in a maritime case, within the jurisdiction of the admiralty, the States can give a remedy *in rem,* for the reason simply that it belongs to a class of cases in which the courts of admiralty confine themselves to process *in personam.* In cases of materials or supplies furnished to vessels engaged in foreign commerce, although furnished at the home port, no doubt can exist as to the *jurisdiction* of the courts of admiralty of the United States. (*The General Smith,* 4 Wheat., 438; *The St. Lawrence,* 1 Black, 522.) The questions of *lien* and of process *in rem,* in such cases, have been the subject of much discussion and no little confusion. But it has never been questioned that the claims of material men for supplies to domestic vessels not engaged in purely internal navigation of the waters of a State, are causes of admiralty and maritime jurisdiction cognizable in some form in the courts of admiralty.

No stronger assertion of such jurisdiction can be made than that contained in the rules which the Supreme Court has from time to time adopted, and those now in force, in respect to such claims. That court has heretofore, by its rules, not only asserted jurisdiction in such cases, but also the power of issuing process *in rem* therein, under certain conditions. And, since the amendment of 1858 (which abolished the provision of the rule of 1844 allowing process *in rem* against domestic

vessels for supplies, when the local law gave a lien), it has been solemnly adjudged by the Supreme Court that that amendment was prospective merely. That, therefore, where, before the amendment, a libel *in rem* was filed against a domestic vessel for supplies furnished in her home port, the libellant was, notwithstanding the amendment, entitled to a decree of condemnation. It was held in that case, that the question was one of practice, not of jurisdiction; that the contract was within the jurisdiction of the admiralty; that the Supreme Court had power under the act of 1842 (5 Stat. at Large, 518), to prescribe forms of proceeding; that it was by virtue of that authority that it made the rule of 1844, allowing process *in rem* when the local law gave a lien; that the power to issue such process was derived from the inherent jurisdiction of the court and the rule, and not from the local law; that the amendment of the rule of 1858 did not imply that the court had in the interval become convinced that it wanted jurisdiction, but merely that various considerations made it desirable not to permit that particular form of process in those cases; and that the rule was amended in 1858 by the same authority by which it was made in 1844: and the decree of condemnation was accordingly sustained. (*The St. Lawrence*, 1 Black, 522, 525, 529, 530.)

The twelfth rule in admiralty, as thus amended, and now in force, provides that, in all suits by material men for supplies etc., for a foreign ship, or a ship in a foreign port, the libellant may proceed either *in rem* or *in personam;* but that the like proceeding *in personam*, but not *in rem*, shall apply to cases of domestic ships for supplies, repairs, or other necessaries.

It is self-evident, that, unless a claim for supplies to a domestic ship is a civil cause of admiralty and maritime jurisdiction, the federal courts of admiralty have no power even to issue process *in personam*. The assertion of the power to issue any sort of process necessarily involves an assertion of jurisdiction over the subject-matter of the controversy. When that jurisdiction exists, it is exclusive, subject only to the

proviso; and the exclusive character of this jurisdiction is not confined, by the act of 1789, to maritime liens, but extends to all civil causes of admiralty and maritime jurisdiction. There are many such causes where no lien is given or can operate, as, for instance, assaults on the high seas, marine insurance, passage-money, masters' wages, etc.; and to these may be added, cases of supplies to a foreign ship, where the circumstances indicate that the credit was not given to the vessel.

In view of the rules and decisions of our own Supreme Court, it is hardly necessary to refer to the limits which have, from time to time, been placed on the jurisdiction of the English courts of admiralty, but which, however, do not apply to ours ( *Waring* v. *Clarke,* 5 How., 441; *Bags of Linseed,* 1 Black, 113), or to the extensive jurisdiction of the courts of admiralty of continental Europe, which always recognized the lien of material men for supplies to domestic as well as foreign vessels. (*The Brig Nestor,* 1 Sum., 79; 1 Bell Com., 525–527; Ben. Admiralty, §§ 271, 272.) It is sufficient to show, that although our courts of admiralty may not recognize such a lien, not deeming the credit given to the vessel, they have retained jurisdiction over the subject of these claims, and that whatever restrictions now exist as to the remedy are self-imposed by our own courts, and do not arise from any lack of jurisdiction over the subject. In view of the doctrine of the case of *The St. Lawrence,* I can see no want of power in the Supreme Court, should it see fit so to do, to restore the rule of 1844, or to allow a remedy *in rem* to material men in all cases. The English parliament, in 1840, restored to the admiralty courts of that nation their jurisdiction in cases of material men, of which they had been deprived for two centuries, but limited it to foreign vessels. (*McAlexander,* 1 Rob. Adm. R., 293, 295; 3 and 4 Vic., ch. 65.) And, if the necessities of commerce require that, in this country, there should be a remedy *in rem* in all cases of material men, it is much more appropriate that it should be administered by the courts of admiralty than under the laws which may

from time to time, be in force in the several States, especially in respect to vessels not engaged exclusively in the internal commerce of a State, but which may be subject to liabilities incurred in different States or in foreign countries in favor of persons other than the attaching creditor.

But, whatever remedies may be afforded by the courts of admiralty under their rules, it is declared by the highest federal tribunal, that all State statutes which attempt to confer upon State courts a remedy for marine torts or marine contracts, by proceedings strictly *in rem*, are void. (*The Hine*, 4 Wall., 555; *The Moses Taylor*, id., 568.) The exclusive character of the jurisdiction of the courts of admiralty, when it exists, cannot be affected by the question of lien or the form of remedy. In the case of *The Hine*, the claim was for a marine tort — a collision; but there is nothing in the reasoning of the court from which it could be inferred that the judgment would have been different had the attachment been issued against the vessel for an assault on the high seas by the master on one of his crew; yet, by a provision of the twelfth rule, process *in personam* only could issue in such a case.

The claim in the present case is for wharfage. In a very recent case, decided in the District Court of the eastern district of New York (*Kelsey* v. *The Kate Tremaine*, March, 1871), in an exhaustive opinion by BENEDICT, J., it is shown that from a very early period wharfage demands have been treated as one class of well recognized maritime demands, regulated by maritime codes, and enforced by maritime courts; that in the colonial Vice-admiralty Court of the province of Massachusetts there is a record of an action *in rem*, to recover wharfage; that wharfage was recognized as a maritime demand by Judge STORY in *Ex parte Lewis* (2 Gall, 483); by Judge WARE in the case of *The Phœbe* (Ware, p. 360), and in the case of *The McDonough* (Gilpin, 103), and by the Supreme Court in the case of the *The St. Jago de Cuba* (9 Wheat., 418).

It was further held by the learned court in the case of *The Kate Tremaine*, that wharfage was a lien upon the vessel,

which might be enforced by process *in rem*, notwithstanding that the boat was a domestic vessel, her owner residing in New York, where the debt was contracted, and notwithstanding the twelfth rule, that the contract being maritime, the right to process *in rem* followed of course, and was denied only to material men, and that a wharfinger did not come under that designation.

Independently of that position, however, the demand for wharfage being a maritime demand, cognizable in the admiralty, the case falls clearly within the decision in the case of *The Josephine*, whether the district courts are authorized to issue process *in rem*, or only *in personam*, for its collection. The admiralty jurisdiction in this class of cases is altogether independent of the doctrine of liens. (Per STORY, J., 2 Gall, 485.)

It is insisted, however, that the reversal of the judgment was erroneous, for the reason that no question as to the jurisdiction to issue the warrant of attachment was properly before the General Term. No such question was raised at the trial, and there is no exception in the case under which it could be presented for adjudication on appeal. On a motion for a new trial the point could have been considered without any exception; but such a motion must be made to the Special Term in the first instance. (Code, § 265.) No such motion was made, but an appeal from the judgment was taken directly to the General Term; and it is claimed that on such an appeal the court could only review exceptions taken at the trial.

The answer to this objection is, that the appeal brings up the judgment roll as well as the exceptions; and if it appear in the face of this record, either that the court had no jurisdiction of the subject of the action, or that the complaint does not state facts sufficient to constitute a cause of action, this is error, for which the judgment should be reversed, unless the error is such as might be cured by amendment, or by conforming the allegations of the complaint to the facts proved. (Code, § 173.)

The record does not disclose any want of jurisdiction of the subject-matter of this action, which is brought upon a bond. The question of jurisdiction affects merely the validity of the bond; but the facts stated in the case conclusively show that the bond was void, having been taken by a public officer in a void proceeding, and that no action can be maintained upon it. This difficulty could not be obviated by any amendment or proof, and was sufficient ground for the reversal of the judgment by the court at General Term.

As the objection to the validity of the bond cannot be obviated, a new trial would be of no avail, and the final judgment of reversal must therefore be affirmed, with costs.

All the judges concurring, judgment affirmed.