Day, Chief Judge.
The original case was brought, by a proceeding in rem, under the watercraft law of the state, in the Superior Court of Cincinnati, by Dumont against the Steamboat Petrel, by name, to recover for repairs at Cincinnati, her home port, charged to the boat, which was engaged in inter-state commerce on the Ohio river.
Judgment was rendered against the boat, and this peti *609 tion in error is prosecuted to reverse the judgment, for want of jurisdiction in the state court, to proceed in rem against the boat.
That the Ohio is a navigable river, to which the admiralty jurisdiction of the United States courts extends, can not now be questioned; nor can it be disputed that such jurisdiction of that river is controlled by the judiciary act of 1789. These points were settled in The Steamboat Gen. Buell v. Long, 18 Ohio St. 521, upon the authority of the decisions of the Supreme Court of the United States.
It is claimed, on the part of the plaintiff in error, that, under the act of 1789, the United States District Court, as a court of admiralty, has exclusive cognizance of proceedings in rem for repairs and supplies to a vessel engaged in commerce, though they are furnished in her home port.
On the part of the defendant in error, it is claimed: 1. That a contract for repairs or supplies of a vessel in her home port is not a maritime contract, and therefore not within the admiralty jurisdiction. 2. If it be regarded as a maritime contract, that no maritime lien arises thereon, and therefore the enforcement of a state lien, by a proceeding in rem in the state court, authorized by a state law, is no encroachment upon the admiralty jurisdiction of the federal courts.
The first question, then, to be determined, is, whether-contracts for repairs and supplies furnished to a vessel, at her home port, are maritime contracts; for, if not, like contracts for ship-building, they do not come within the admiralty jurisdiction, and therefore no question of conflicting jurisdiction can arise. Scow Tuttle v. Buck, 23 Ohio St. 565; People’s Ferry Co. v. Beers, 20 How. 393; Roach v. Chapman, 22 Ib. 129.
Undoubtedly -numerous eases, and much that may be found in the text-books, tend to show that contracts for repairs and supplies at the home port are contracts “ made on land to be performed on land,” and can not, therefore, be regarded as maritime contracts. Williamson v. Hogan, *610 46 Ill. 504; Boylan v. Steamer Victory, 40 Miss. 244; Cavender v. Steamer Fanny Barker, Ib. 242; Southern Dry-Dock Co. v. Gibson, 22 La. Ann. 623.
But the Supreme Court of the United States is the ultimate tribunal on questions pertaining to admiralty jurisdiction ; resort must therefore be had to the decisions of that court for the determination of this and all other questions relating to that jurisdiction.
That court has long recognized contracts for repairs and supplies to vessels in the home port as maritime contracts, and sustains the admiralty jurisdiction over them; but (though not without dispute) it holds that no maritime lien arises thereon. It must therefore be regarded as settled law, that such contracts are maritime contracts, though no maritime lien arises thereon. The General Smith, 4 Wheat. 438; The Lottawanna, 20 Wall. 219; Same case, 21 Ib. 571, 580; Steamer St. Lawrence, 1 Black, 522; Admiralty “Rule XII.,” 21 Wall. 560.
Since, then, the case can not be summarily disposed of on the ground that the contract on which the suit was founded is not a maritime contract, how is it affected by the .maritime character of the contract ? There -would be no • difficulty in disposing of this question, if a maritime lien resulted from the contract; for then, it is conceded to be •the settled law, that the proceeding ire rem would be within the exclusive cognizance of the admiralty powers of the federal courts. The Moses Taylor, 4 Wall. 411; The Hine, Ib. 555; The General Buell, supra. Hoes the fact that no •maritime lien arose on the contract lead to a different re.sult? The answer to this question requires a more extended examination of the admiralty jurisdiction and powders-conferred upon the federal courts.
The constitution of the United States extends the judicial power of the United States “ to all cases of admiralty .and maritime jurisdiction.”
The 9th section of the judiciary act of 1789, in establishing the jurisdiction of the federal courts, provides that the .district courts of the United States “shall, have exclusive *611 original cognizance of all civil causes of admiralty and maritime jurisdiction, . . . saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it.” The language of the act is broad and general, comprehending all causes of admiralty and maritime jurisdiction. Every case of that character comes, therefore, within the original cognizance of the District Court of the United States, and that cognizance is exclusive of that of any other court, excepting only the right of common-law remedies, which are expressly saved to suitors. If, then, the claim on which the suit is founded be one of admiralty and maritime jurisdiction, and the remedy resorted to is one unknown to the common law, it logically follows that the case comes within the exclusive cognizance of the federal court, and that the state court has not, therefore, jurisdiction of such remedy.
It must, then, be determined whether the case is one of admiralty jurisdiction. That the contract for repairs of the boat, at her home port, on which the suit was brought, is a maritime contract, on which a suit in personam, might have been brought in the admiralty court, is settled by the decisions of the Supreme Court of the United States.
It is equally well settled that, in. the execution of the admiralty powers of the United States district courts, process in rem may be issued by them upon contracts for repairs or supplies to domestic vessels, where there exists a local or state lien therefor, though no maritime lien arises on such contracts. Admiralty “ Rule XII.” of 1844 and of 1859, 21 Wall. 560; also, Admiralty Rule of 1872, Id. 562; The Steamer St. Lawrence, 1 Black, 522.
The fact that process in rem was prohibited by “ Admiralty Rule XII.” as it existed from 1859 to 1872, during which period this case was brought, does not at all affect the question of jurisdiction conferred by the act of 1789; for the process, under the admiralty jurisdiction, whether it be in personam or in rem, pertains to the form of remedy only, and is not a test of jurisdiction. The admiralty jurisdiction of a case rests upon other grounds than that of the *612 form • of the remedy, pursued. In all cases on contracts coming within that jurisdiction, the remedy may be sought in personam, and when the case is one in which there exists a maritime lien,- the remedy may, of right, be pursued in rem; and if there be no maritime lien, but one exists, arising from the cause of action against the vessel or boat by virtue of a state law, courts of admiralty may extend their process'in rem to the enforcement of the lien, subject to the rules of practice adopted by the United States Supreme Court. But the use of this process relates wholly to the remedy, and not to the jurisdiction of the case. It was accordingly held, in the Steamer St. Lawrence, supra, that, though such local or state liens form no part of the admiralty and maritime jurisdiction conferred on the government of the United States, they might nevertheless be enforced by the admiralty courts, when the contract to which they appertained was within the admiralty jurisdiction, not as a matter of right, but as a discretionary power, which the court might exercise for the purposes of justice The question of jurisdiction, then, is not dependent on the form of the process.
“The admiralty jurisdiction, in cases of contract, depends primarily upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching rights and duties appertaining to commerce and navigation.” People’s Ferry Co. v. Beers, 20 How. 401. That the clause of the act, “ all civil causes of admiralty and maritime jurisdiction,” relates to the nature and subject-matter of such “causes,” is evinced by the saving clause, preserving to suitors common law remedies on the same causes of action. "We must then look to the subject-matter or nature of the contract to determine whether the cause is one of admiralty and maritime jurisdiction within the meaning of the act of 1789. This is the fundamental inquiry in all the cases where the question has been raised. The Moses Taylor, 4 Wall. 427; The Belfast, 7 Wall. 637; Steamboat Orleans v. Phœbus, 11 Peters, 183; Brookman v. *613 Hamill, 43 N. Y. 561; Steamboat Josephine, 39 N. Y. 19; Crawford v. Bark Caroline Reed, 42 Cal. 474.
There can be no maritime lien, when the case relates to a contract, without a maritime contract out of which it arises, and no process in rem, as of right, without a maritime lien ; nor does the state law give a lien and process in rem against a boat otherwise than “ for all debts contracted on account thereof” (S. & O. 252); so that, at last, the process and lien depends upon the contract, and without the contract there would be neither process, lien, nor cause of action. It is, therefore, the contract upon which the action is founded that determines the question of jurisdiction, and if that be maritime, it falls within the admiralty and maritime jurisdiction conferred on the United States district courts.
We have already shown that the claim'on which the suit was based is one of a maritime nature; and therefore it is a “cause of admiralty and maritime jurisdiction” within the meaning of the ninth section of the act of 1789. That jurisdiction is exclusive, and its exclusive character, is not confined to maritime liens, but expressly extends to all civil causes of admiralty and maritime jurisdiction; when, therefore, the jurisdiction exists, it is exclusive in all cases, subject only to the saving clause of the section. It remains, then, to determine whether the case comes within that clause. It is in this view only that it becomes material to consider what effect the character of the proceeding has upon the case.
The saving of the section is not that of a concurrent remedy in other courts, leaving nothing to the exclusive cognizance of the admiralty court, nor of a state remedy where no maritime lien exists, but the saving is to suitors alone, and to them of common law remedies only. If, then, a proceeding in rem against a boat or vessel, after the manner of courts exercising admiralty jurisdiction, is not a common-law remedy, the saving clause in question does not exempt the case from the exclusive cognizance provided for in the act. By an act of • Congress, the forms and *614 .modes of proceeding of courts of admiralty jurisdiction are required to be according to the course of the civil law. The Steamer St. Lawrence, 1 Black, 527. The admiralty proceeding in rem had its origin in the civil, and notin the common law.
In The Moses Taylor and Hine cases, the Supreme Court of the United States expressly decided that such a proceeding in rem is not a common law remedy within the meaning of the saving clause in question, and these decisions were followed by the supreme court of this state in The General Buell v. Long. It is true that in each of these cases the action was founded on a claim where, by virtue of a maritime lien, the admiralty remedy in rem existed as matter of right. But the existence or non-existence of the right to that remedy in admiralty can not affect the question as to whether it ever was a common law remedy. Nor is the holding in either case made to depend at all upon the existence of an admiralty lien, but in all of them it is based solely on the maritime character of the contract. The language of the court in The General Buell, as authoritatively expressed in the syllabus, is as follows :
“ A proceeding against a steamboat or other watercraft as defendant under the watercraft law of this state of February 26, 1840, for the breach of a maritime contract, is not a common-law remedy, within the meaning of the saving clause of section 9 of the judiciary act of 1789; but such a proceeding is in the nature, and has the effect of a proceeding in rem in admiralty.”
And such has been the ruling in numerous cases where, as in the one before us, no lien but that created by the state existed. The Steamboat Josephine; Brookman v. Hamill; Crawford v. Bark Caroline Reed, supra; Patrick Dever v. Steamboat Hope, 42 Miss. 715. It may, then, be regarded as settled law that the proceeding in rem against a boat or vessel by name, after the manner of admiralty courts, is not a common-law remedy, and therefore not within the saving clause of section 9 of the act of 1789.
It is said that the suit was not brought on a contract, *615 but is merely a proceeding to enforce .a state lien, where no maritime lien exists, and so does not encroach upon the admiralty jurisdiction. But the fact of encroachment is not what decides the question of jurisdiction. Proceeding by common-law l’emedies, but for the saving clause of' the section, would be an encroachment of the admiralty jurisdiction.
In all the cases the jurisdiction is made to depend upon the contract out of which the lien arose. Any case in rem may, in some sense, be said to be a mere proceeding to enforce a lien. A state can not create a maritime lien, nor are the proceedings in rem, in any of the cases in the state courts, to enforce a maritime lien as such, but are brought to enforce the state lien only. The Moses Taylor and General Buell eases were each brought to enforce state liens, and not maritime liens; and the same argument might have been urged in those cases to sustain the jurisdiction of the state court; but the state jurisdiction was not sustained in those cases, not upon the ground of an encroachment of liens, but because the contracts on which the liens were founded were maritime, and therefore within the admiralty jurisdiction. In the Buell case it is said in the opinion that the case was instituted against the boat “ for the breach of a contract to transport the plaintiff';” so the action, as well as the lien, is founded on the contract.
In Hamilton v. Merril, 25 Ohio St. 11, the court say: The question of jurisdiction, under the watercraft act, “ depends on the fact whether or not the cause of action in the case was a maritime cause of action.” So in The Scow Tuttle, 23 Ohio St. 565, “ the contract out of which the cause of action arose” is made the test of jurisdiction ; so that when, as in this case, the state lien is founded on a maritime contract, the jurisdiction of the contract determines the fate of the lien; for without the contract there" would be no lien; they can not be separated.
But an examination of the state watercraft law (S. & O. 252, and S. & S. 92), under which the suit was brought, will show that the action, as well as the lien, is based on the *616 contract, and that the suit against the boat is as much founded upon the contract as it would have been had it been brought against the owner alone. By the .first section of the act, the lien against and liability of the boat “ for debts contracted on account thereof,” for repairs and supplies, is provided for; and the second section authorizes any person having such claim to proceed “ against the craft itself.” The third section provides that “ when the suit shall be commenced against the craft, the plaintiff shall file his petition . . . against the craft by name, . . . which petition shall contain, as in other civil actions, a statement of the facts constituting the plaintiff’s cause of action, and a demand for the relief which the plaintiff' supposes himself entitled to.” The fourth section provides that a summons shall issue, with the warrant of seizure, “ as in other civil actions;” and the sixth section provides that the case shall proceed to judgment and execution to the full satisfaction of the judgment, “ as upon other judgments.” Accordingly, the ease made in.the pleadings against the boat in this case is, as required by the statute, the same as it would be if the suit was against the owner. The contract is, of necessity, the foundation of both the lien and the action, and the suit is brought to recover a judgment on the contract against the boat, as defendant, in place of the owner. The cause of action is the contract for repairs; the proceeding against the boat is a remedy given by statute on the contract. Since, then, the enforcement of the lien can not be detached from an enforcement of the contract, and the contract, which is the basis of both the lien and the action, is of a maritime nature, and therefore within the admiralty jurisdiction, the case comes within the cognizance of the admiralty courts, which is exclusive of that of all other courts, except as to common-law remedies.
We have been referred to decisions of the highest courts in a number of the states, holding that the proceeding in rem on contracts for repairs or supplies to a vessel at her home port is not within the exclusive jurisdiction of *617 the admiralty courts. But the ground of the decisions, in all the cases which give any reasons therefor, is that the contract is not a maritime contract. That ground, under the decisions of the United States Supreme Court, we have seen, is not tenable.
The following cases, directly on the question involved in this case, recognizing the maritime nature of such contracts, are in accordance with the views we have expressed, and have influenced our determination of the case: Brookman v. Hamill, 43 N. Y. 554; Steamboat Josephine, 39 N. Y. 19; Crawford v. Bark Caroline Reed, 42 Cal. 469; Patrick Dever v. Steamboat Hope, 42 Miss. 715; Weston v. Morse, 40 Wis. 455.
Although the exact point in controversy in this case has not, perhaps, been necessarily involved in any case decided by the United States Supreme Court, it is believed the principles involved in the cases determined by that court are decisive of the case. Various dicta of some of the justices of that court have been referred to in support of the proposition that when courts of admiralty refuse the process in rem, resort may be had to the state laws giving that form of remedy. But these dicta are referable to a want of admiralty jurisdiction of the contract, or to the enforcement of state liens in the state courts by proceedings other than the process in rem.
In The Belfast, 7 Wall. 624, it is said: “ State legislatures have no authority to create a maritime lien, nor can they confer any jurisdiction upon a state court to enforce such a lien by a suit or proceeding in rem, as practiced in the admiralty courts. . . . Such a lien does not arise in a contract for materials and supplies furnished to a vessel in her home port; and, in respect to such contracts, it is competent for the states, under the decisions of this court, to create such liens as their legislatures may deem just and expedient, not amounting to a regulation of commerce, and to enact reasonable rules and regulations prescribing the mode of their enforcement.”
“ Contracts for ship-building are held not to he maritime *618 contracts, and, of course, they fall within the same category.”
The same justice has many times since repeated the same remarks, without, however, ever having explained how contracts for ship-building, not eomiug within the admiralty jurisdiction, fall into the same category with maritime contracts in which no maritime lien arises, nor what would be regarded as reasonable rules and regulations for the enforcement of such maritime contracts.
In the later case of Edwards v. Elliot, 21 Wall. 557, we are left to infer that a proceeding in rem on such contracts in a state court would be in conflict with the exclusive cognizance of the admiralty courts; for the same justice there says, in regard to such contracts and state liens, that the state may “ enact reasonable rules and regulations pi’escribing the mode of their enforcement, if not inconsistent with the exclusive jurisdiction of the admiralty courts.” The words here added to the former statement of the power of the state courts, are significant, in connection with the fact that the case was decided about the time that of The Lottawanna (21 Wall. 558), which was tv ice argued and much considered, was announced. In that case the opinion was delivered by another justice, who is more explicit. His language is as follows:
“ It seems to be settled in our jurisprudence that so long as Congress does not interpose to regulate the subject, the right of material-men furnishing necessaries to a vessel in her home port may be regulated in each state by state legislation. State laws, it is true, can not exclude the contract for furnishing such necessaries from the domain of admiralty jurisdiction, for it is a maritime contract, and they can not alter the limits of that jurisdiction ; nor can they confer it upon the state courts so as to enable them to proceed in rem for the enforcement of liens created by such state laws, for it is exclusively conferred upon the district courts of the United States. They can only authorize the enforcement thereof by common-law remedies, or such remedies as are equivalent thereto. But the district courts of the United *619 States, having jurisdiction of the contract as a maritime one, may enforce liens given for its security, even when created by state laws.”
This enunciation from the Supreme Court of the United States is directly in point, and is in harmony with its former decisions. We may, therefore, reasonably conclude that it was put forth as the holding of the court upon a point which, though not essential to the decision of the case, had been considered by them, for it is evident that the point has often been called to their attention.
We are strengthened in this belief from the fact that the rule restoring the process in rem against domestic ships to the admiralty courts, was adopted by the supreme court about the time of the later decisions referred to, doubtless to preserve the remedy in rem, which would otherwise be wholly unavailable in that class of cases.
It follows that the remedy in rem against a boat or vessel, given by the state watercraft law, so far as it relates to contracts of a maritime nature, is unavailable in the state courts, by reason of its being within the exclusive cognizance of courts of admiralty jurisdiction, and that such state liens, so far as relates to the state courts, are left to be enforced therein by other remedies, which are or may be provided by law.

Judgment reversed.