## Case No. 10,815.

### In re PATTERSON.

[1 Ben. 508;[1] 1 N. B. R. 125, 150; Bankr. Reg. Supp. 27, 33; 6 Int. Rev. Rec. 157.]

District Court, S. D. New York. Oct. 30, 1867.

BANKRUPTCY—COMMENCEMENT OF PROCEEDINGS—TIME TO WHICH THE ASSIGNMENT RELATES—ADJUDICATION — AMENDMENT OF PETITION OR SCHEDULES — RIGHT TO CONSULT COUNSEL ON EXAMINATION.

1. When a petition in bankruptcy is filed, which is followed by an adjudication of bankruptcy, the time of the filing of the petition is the commencement of proceedings in bankruptcy, and the assignment, when made, relates to that date.

[Cited in Re Levy, Case No. 8,296; Re Rosenfield, Id. 12,059; Re Crawford, Id. 3,363; Re Hennocksburgh, Id. 6,367; Re Litchfield, Id. 8,385.]

2. The fact that amendments to the petition or the schedules attached are afterwards, by order of the register, filed before the adjudication, does not affect the date to which the assignment relates.

3. If no adjudication in bankruptcy is made upon a petition, no proceedings are commenced, so as to affect the title to the debtor's property, or to give a creditor any right against the debtor as a bankrupt, or against his property, except such as are provided by section forty.

4. The words "may be issued," in section thirty-eight of the bankruptcy act [of 1867; 14 Stat. 535], are to be read, "shall be issued."

5. The adjudication of bankruptcy in a voluntary case ought not to be postponed until the register has, in accordance with general order No. 7 and rule 4 of this court, certified the petition and schedules to be correct.

6. The words "adjudication of bankruptcy," in sections fourteen and nineteen of the act, mean the commencement of the proceedings, according to section thirty-eight.

7. The register is the proper judge of the propriety of allowing a bankrupt, who is under examination, the privilege of consulting with his counsel, provided that such consultation does not cause delay in the proceedings; and the court will not interfere with the exercise of such discretion, in ordinary cases.

[Cited in Re Judson, Case No. 7,562; Re Collins, Id. 3,008.]

[In the matter of Charles G. Patterson, a bankrupt.]

B. Sanford, for bankrupt.
Benedict & Benedict, for creditors.

BLATCHFORD, District Judge. This is a special case stated for the opinion of the court in this matter under section six of the act. It is signed by the attorneys for the bankrupt, and the attorneys for Tupper & Beattie, creditors, who have proved their debt; and it is certified by the register, under general order No. 11, to contain questions raised before him in the proceedings in this matter.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

The examination of the bankrupt was proceeding before the register, and the bankrupt testified that he received a sum of $5,000 about the 25th of August, 1867, which he then borrowed from one Charles Kirby, and which he had not repaid. Thereupon the creditors asked him this question: "Where is it?" The question was objected to by the bankrupt, and the register overruled the objection. The bankrupt answered: "It has been mostly spent—used." He was then asked: "How much of it has been spent?" To this question the bankrupt objected, on the ground that, as matter of law, the examining creditors had no right to inquire of the bankrupt as to any property in his possession, which was acquired after the commencement of the proceedings in bankruptcy under which his examination was had, and that, if they had that right, it was exhausted by previous interrogatories put and answered. The bankrupt then requested the register to adjourn the question into court, as an issue of law, to be decided by the judge, under section four of the act. The register declined to adjourn the question into court, and decided that the question should be answered. It is agreed that the records and files in the case are a part of the special case. It is also agreed that the following questions are presented to the court: (1.) Was the register correct in declining to adjourn the question into court, as an issue of law? (2.) Were the questions above set forth admissible?

For the reasons set forth in my decision made herewith, in the matter of Samuel M. Levy and Mark Levy, I hold that the register was correct in declining to adjourn the question into court as an issue of law.

A decision on the second question presented by the special case involves a decision as to the time when the line is to be drawn, between property which does, and property which does not, pass to the assignee in bankruptcy.

In the present case, the chronology of the case is as follows: On the 25th of June, 1867, a petition, with schedules, was filed. On the 27th of June the register examined the same and found them deficient. Proceedings were adjourned from time to time until the 8th of August, on which day the register, on the application of the petitioner, duly verified, made an order that he have leave to file amended schedules, A and B, to his petition, by filing and substituting new and complete schedules. On the 19th of August, new and complete schedules, A and B, comprising the whole eleven of the sheets composing schedules A and B in form No. 1, were filed, accompanied by oaths to the new schedules; but no new petition was filed, nor any amendment to the petition. On the 6th of September the register examined the substituted schedules, and certified the same to be incorrect in form and deficient. On the 10th of September, the register made an

order giving leave to the petitioner to file amendments to his substituted schedules. On the 11th of September, the petitioner filed an amendment to schedule A, No. 2, and one to schedule A, No. 3, duly verified. On the 12th of September, the register examined the petition and schedules, and certified the same, as amended, to be correct, and made adjudication of bankruptcy, and granted a certificate of protection. On the 13th of September, the register issued a warrant to the marshal, returnable October 23d. On the 23d of September, the proof of debt by Tupper & Beattie for $7,952.66 was received and filed by the register. On the 25th of September the register, on the application of Tupper & Beattie, made an order, returnable October 9th, for the examination of the bankrupt. This order fell through for want of service, and another order was made, returnable October 15th, under which the bankrupt attended before the register on that day, and his examination has proceeded.

It thus appears that the petition was filed on the 25th of June, the money inquired about was borrowed and received by the bankrupt on the 25th of August, and the adjudication of bankruptcy was made on the 12th of September. An assignee was elected by the creditors on the 23d of October, at their first meeting, and his choice has been approved by the register and the judge, and he has accepted the trust.

It is insisted by the creditors that everything which was the property of the bankrupt on the 12th of September, at the time the adjudication of bankruptcy was made, passed to the assignee when he was appointed; and it is contended by the bankrupt that nothing passed to the assignee which became the property of the bankrupt after the 25th of June, when his petition was filed. If the latter view is the correct one, the questions in regard to the $5,000 were improper. If the former view is the correct one, the questions were proper. The whole subject has been orally argued before me by the counsel for the respective parties.

The fourteenth section of the act provides, that the assignment to be executed to the assignee shall "assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto, and such assignment shall relate back to the commencement of said proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee." The intent and purport of this provision is, that the property which was the property of the bankrupt at the time of the commencement of the proceedings in bankruptcy, and no other property, shall vest in the assignee, and shall vest in him as of the time of the commencement of such proceedings, no matter when the assignment to the assignee is actually executed. It does not mean that the property which is the property

of the bankrupt at the time the assignment is executed, and also the property which was his property at the time of the commencement of the proceedings, shall pass to the assignee. The whole clause must be read together, and, so read, the words "all the estate, real and personal, of the bankrupt" do not mean all that which is his estate at the time the assignment is executed, but they only mean all that which was his estate at the time of the commencement of the proceedings in bankruptcy. So, also, form No. 18, the form of the assignment, construed in connection with the statute, and purporting on its face, as it does, to be made by virtue of the authority conferred by the fourteenth section of the act, conveys to the assignee only the property which was the property of the bankrupt at the time of the commencement of the proceedings in bankruptcy, and the blanks in it for a date are to be filled with the date of the day of the commencement of such proceedings. The word "is," in that form, before the word "possessed," is probably a misprint. The form is evidently copied almost verbatim from the form of assignment used under the Massachusetts insolvent law, and in that form the word "was" is used, and not "is," before the word "possessed."

This brings up the question, What is the time of the commencement of proceedings in bankruptcy? The thirty-eighth section of the act undertakes to determine this. It provides, "that the filing of a petition for adjudication in bankruptcy, either by a debtor in his own behalf, or by any creditor against a debtor, upon which an order may be issued by the court or by a register in the manner provided in section four, shall be deemed and taken to be the commencement of proceedings in bankruptcy under this act." The order referred to in this provision must be one which can be issued by the court, and which can be also issued by a register, provided power is given to the register by section four to issue it; and it evidently must be the earliest order which can be so issued, and it must be an order which is common to voluntary and involuntary cases. It cannot mean the order of reference to a register, form No. 4, for that is confined to voluntary cases, and can never be made by the register, and there is no corresponding order in involuntary cases. It must mean the order adjudicating the debtor to be a bankrupt. This order, in voluntary cases, is form No. 5, and it is called an order, in a note to that form. It may be made by the court, and it may also be made by the register under section four. In involuntary cases this order is form No. 58, and is called an order on the face of it. It is called, in section forty-two, an "order of adjudication of bankruptcy." It can be made by the court, but it cannot be made by a register, because section four of the act, as interpreted by general order No. 5, does not authorize a register to make it. The order of adjudication is the earliest order which answers the requirements

of the statute. Besides, the good sense of the provision harmonizes with this view. Striking out the words "either by a debtor in his own behalf, or by any creditor against a debtor," the provision reads, that "the filing of a petition for adjudication in bankruptcy, upon which an order may be issued by the court or by a register, &c." The words "for adjudication in bankruptcy" are to be understood after the word "order", in like manner as they are found after the word "petition." The petition is filed for an adjudication. The order for an adjudication follows the filing of such a petition.

The next question is, as to what is the meaning of the words, "may be issued." The word "may" must here be interpreted to mean "shall." The filing of a petition, upon which an order of adjudication shall be issued, whether in a voluntary case or in an involuntary case, is the commencement of proceedings in bankruptcy. Unless the order of adjudication is made, the filing of the petition is not the commencement of proceedings. In a voluntary case, the petition may be filed, and, before the adjudication is made, the debtor may, for good reasons, have the proceedings stayed by the court, and they may never be resumed. In such case, no title of the debtor to any property can be affected, nor can any creditor acquire any rights, under the proceedings, for no proceedings will, in a legal sense, have been commenced. So, in an involuntary case, if, under section forty-one, on the return of the order to show cause, the allegations of the petition are not proved, no order of adjudication is made, and no proceedings have, in a legal sense, been commenced, so as to affect the title to the debtor's property, or to give any creditor any rights against the debtor as a bankrupt, or against his property, except the purely provisional rights and remedies provided by section forty. It requires, therefore, an order of adjudication to make the filing of a petition of any avail as a commencement of proceedings. But, when the order of adjudication is made, then the filing of the petition is the commencement of proceedings. By virtue of the making of the order of adjudication, the filing of the petition becomes the commencement of proceedings. The making of the order of adjudication relates back and gives an effect to the filing of the petition which it could not previously have, and that effect is, that the proceedings are to be considered as having been commenced when the petition was filed.

What is the petition, and what is its filing? By section eleven, the petition, in a voluntary case, is to contain certain averments, and is to have annexed to it a sworn schedule of debts and a sworn inventory of property; and it is declared that, if the debtor applies by such a petition, with such a schedule and such an inventory annexed, "the filing of such petition shall be an act of bankruptcy, and such petitioner shall be adjudged a bankrupt." In an involuntary case, by section thirty-nine, a petition by a creditor is provided for, and, by section forty, it is provided that, on the filing of the petition, an order shall be made for the debtor to show cause why the prayer of the petition should not be granted. No provision is made by the act for the filing of more than one petition by the same debtor or the same creditor, in the same matter, or for more than one filing of such petition. The forty-second section provides that the order of adjudication of bankruptcy, in an involuntary case, shall require the bankrupt to give to the marshal a schedule of his creditors, and an inventory of his estate, in the form, and verified in the manner, required of a petitioning debtor. The twenty-sixth section provides, that the bankrupt shall "be at liberty, from time to time, upon oath, to amend and correct his schedule of creditors and property, so that the same shall conform to the facts." General order No. 7 provides, that "the court may allow amendments to be made in the petition and schedules upon the application of the petitioner, upon proper cause shown, at any time prior to the discharge of the bankrupt," and general order No. 33 provides specially for the mode of making amendments to the schedules, annexed to the debtor's petition. All these provisions serve to show that the petition is filed once for all in any case; that, if it is amended, such amendment does not alter the date of its filing, or postpone the effective vigor of such filing to the time the amendment to it is filed; that the amending of the schedules does not affect or postpone the time of the filing of the petition; and that any petition or schedule that is amended is merely amended, leaving the original that is amended still to stand, so far as the question of jurisdiction or commencement of proceedings is concerned, in regard to the time when it was filed, as if it were not amended.

This being so, section eleven declares, that the filing of the petition "shall be an act of bankruptcy, and such petitioner shall be adjudged a bankrupt." When such a voluntary petitioner as the eleventh section specifies declares, by petition to the proper court, his inability to pay his debts in full, and his willingness to surrender all his estate and effects for the benefit of his creditors, and his desire to obtain the benefit of the act, and annexes to his petition what purports to be the verified schedule and inventory required by the eleventh section, the filing of his petition is an act of bankruptcy, and he has a right to be adjudged a bankrupt immediately upon the filing of the petition, even though his petition and schedules may require amendment, and may afterwards be allowed to be amended. The adjudication of bankruptcy, in a voluntary case, ought not to be postponed until, under general order No. 7 and rule 4 of this court, the register has examined the petition and schedules, and certified them to be correct in form. In the present case, that practice seems to have been pursued, for the petition was filed on the 25th of June, and the

adjudication of bankruptcy was postponed until the 12th of September, in order to allow the schedules to be made correct in form. No amendment was made to the petition.

The forms for orders of adjudication support this view. Form No. 5, for a voluntary case, states that the register finds that the debtor "has become a bankrupt," and that the register thereby declares and adjudges him a bankrupt accordingly. He does not become a bankrupt by the adjudication, but he becomes one by the filing of the petition, provided the adjudication is afterwards made. The adjudication is merely a certificate or order, made by an authorized officer, to the effect that the petitioner became a bankrupt by the filing of his petition. Hence, in the title of the matter, in form No. 5, the date of the filing of the petition is set forth, and the adjudication is, in effect, a finding or order by the register that the petitioner became a bankrupt when his petition was filed, and that he is declared and adjudged to be such bankrupt. So, in an involuntary case, the adjudication, form No. 58, adjudges that the debtor became bankrupt before the filing of the petition, and, therefore, declares and adjudges him a bankrupt accordingly. In a voluntary case, he becomes a bankrupt when he files his petition. In an involuntary case, he becomes a bankrupt before the petition is filed against him. In the former case, the filing of the petition is the act of bankruptcy. In the latter case, some act committed before the filing of the creditor's petition was the act of bankruptcy. But, in both cases, the adjudication is nothing but a judicial finding of the fact, that the act of bankruptcy was committed at some period prior to the time the adjudication is made. When this finding is made, then it is legally adjudged, in the voluntary case, that the proceedings were commenced when the debtor's petition was filed, which filing was itself the act of bankruptcy; and, in the involuntary case, that the proceedings were commenced when the creditor's petition was filed, and not before, although the act of bankruptcy was committed before the filing of such petition.

There is nothing in general order No. 7, or in rule 4 of this court, that requires the register to certify the correctness of the petition and schedules before he makes adjudication of bankruptcy. Rule 4 of this court only requires the register to certify such correctness before he issues a warrant to the marshal.

The construction I have given to the act makes all its provisions harmonious. The expression "adjudication of bankruptcy," where it occurs in section fourteen, means a judicial finding that the party became a bankrupt either by the filing of a debtor's petition or before the filing of a creditor's petition. Thus, the provision, in section fourteen, that all the property, rights, &c., of the bankrupt "shall, in virtue of the adjudication of bankruptcy and the appointment of the assignee, be at once vested in such assignee," means, that such property, rights, &c., shall, in virtue of the finding that the bankrupt had previously become a bankrupt and the appointment of the assignee, be at once vested in the assignee; but they vest as of the time of the filing of the petition. The expression, "time of the adjudication of bankruptcy," in sections fourteen and nineteen, means the time when, by the adjudication, the proceedings in bankruptcy were commenced according to section thirty-eight. Thus, under section fourteen, the assignee is to be substituted for the bankrupt, in suits "pending at the time of the adjudication of bankruptcy," that is, pending at the time the proceedings were commenced, according to section thirty-eight. Section sixteen provides, that if, "at the time of the commencement of the proceedings in bankruptcy," an action is pending by the debtor for anything which ought to pass to the assignee, the latter may be admitted to prosecute it in his own name. Section nineteen, in saying that "all debts due and payable from the bankrupt at the time of the adjudication of bankruptcy, and all debts then existing but not payable until a future day," "may be proved against the estate of the bankrupt," means, that all debts due and payable at the time of the commencement of the proceedings, as above defined, may be proved. The same section afterwards provides, that any person liable as bail, &c., for the bankrupt, who shall have paid the debt, shall be entitled to prove such debt, "although such payments shall have been made after the proceedings in bankruptcy were commenced." This implies clearly that, but for this provision, inasmuch as the payments were not made till after the proceedings were commenced, the claim, not being a debt when the proceedings were commenced, could not be proved, and shows that, under the previous part of the section, a debt to be provable must be due, or must exist as a debt, and not as a mere suretyship, at the time the proceedings are commenced; for, if the payments were made after the commencement of the proceedings and before the making of the adjudication, they could, under the previous part of the section, be proved as a debt, if that previous part means that debts which come into existence as such as late as the making of the adjudication can be proved.

We then come to the discharge. Section thirty-two gives the form of the discharge in hæc verba. It discharges the bankrupt from all provable debts which existed on the day (naming it) on which the petition for adjudication was filed by or against him, excepting such debts, if any, as are excepted by the act from the operation of a discharge. The language of the discharge is

too plain for comment. There is but one petition, in judgment of law, in a given case, and but one filing of it.

This makes a harmonious system. When an adjudication of bankruptcy is made, following the filing of a petition, then it is judicially established that the proceedings in the case commenced when the petition was filed. The date of such filing then becomes the date from which the assignee takes all the property of the bankrupt which was his property at that date; but the assignee does not take anything which became the property of the bankrupt after that date. Such date also becomes the date at which a debt must be due or exist, in order to be provable, subject to the special provisions of section nineteen in regard to contingent liabilities. Such date also becomes the date at which provable debts must have existed, in order to be discharged by the discharge. In other words, the date of the filing of the petition by or against a debtor is the date at which, if an adjudication of bankruptcy follows, the old order of things passes away and a new leaf is turned over. Any other construction would work injustice either to the bankrupt or to his creditors. As he can be discharged only from debts which existed on the day the petition was filed, it would be wrong to give to the creditors holding those debts property acquired by him after that day, and thus take it away from the bankrupt, or from creditors whose debts, because not in existence on that day, cannot be proved against him under his bankruptcy.

It follows, therefore, that, in the present case, nothing passed to the assignee which became the property of the bankrupt after the 25th of June, and that the questions in regard to the $5,000 were improper if that money was not the property of the bankrupt when his petition was filed.

On the further examination of the bankrupt, he requested of the register the privilege of consulting his counsel as to his answers to interrogatories.

[By JAMES F. DWIGHT, Register:

[Facts: The bankrupt being under examination by virtue of an order duly issued, and being present with his counsel, Mr. B. Sanford, before the register, comes now and files the following question: "In the Matter of C. G. Patterson, a bankrupt. Before Mr. Register Dwight, before whom said matter is pending, and upon examination had under an order for examination under the 26th section of the law [of 1867 (14 Stat. 529)]. And now comes the above named bankrupt, and being under an examination under an order duly issued and served therefor, and said examination being had by written interrogatories and answers taken down by the register sitting in the case, and respectfully requests that he may be permitted to consult his counsel, Mr. B.

Sanford, in relation to his answers to such interrogatories as may be proposed to him, before answering the same, and to avail of the assistance of his said counsel in drawing his answers to such questions or interrogatories as may be proposed to him in the course of his said examination. C. G. Patterson, by His Attorney, B. Sanford."

[And the register allows the request, to which Mr. Benedict, on behalf of Tupper & Beattie, objects, and requests that the question may be certified to the judge for his decision thereon.

[In my opinion the bankrupt should have the privilege of consulting with his counsel, while under examination, provided that such consultation does not cause delay in the proceedings; which above facts and questions raised are respectfully submitted to his honor the judge, for his decision.] [2]

(Oct. 31, 1867.)

BLATCHFORD, District Judge. Within the limits stated by the register, that is, to the extent of allowing to the bankrupt the privilege of consulting with his counsel while under examination, provided that such consultation does not cause delay in the proceedings, the register is the proper judge of the propriety of allowing to the bankrupt such privilege, and the court will not interfere with the exercise of such discretion, in ordinary cases.