## Case No. 1,884.

### In re BRINKMAN.

[7 N. B. R. 421.][1]

### District Court, S. D. New York.

BANKRUPTCY—ESTATE OF BANKRUPT — MORTGAGE FORECLOSURE IN STATE COURT—DISTRICT COURT —JURISDICTION.

1. Mortgagees should not be permitted to pur-sue the estate of the bankrupt in the state courts, but should come to the tribunal which, under federal laws, is charged with its admin-istration.

2. The purpose and intent of the bankrupt law is to bring the property of the bankrupt into the bankrupt court for administration, and that court is furnished with all needful power to liquidate and settle all liens thereon. and where there are adverse claims which it is not proper to litigate by summary enjoining and order. provision is made by giving jurisdiction to the district court, permanently with the circuit court, for that purpose.

3. In certain cases mortgages upon the real estate of the bankrupt may be foreclosed in a state court, providing no objection is made, and where the assignee is satisfied that the mortgaged premises is of less value than the mortgage debt.

4. Where a foreclosure is pending at the time proceedings in bankruptcy are commenced, the validity of the mortgage and the amount due thereon may sometimes be settled in the state court, and then it is discretionary with the court in bankruptcy to permit a sale by decree of the state court or not.

[Disapproved in Augustine v. McFarland, Case No. 648.]

[1] [Reprinted by permission.]

[In bankruptcy. In the matter of Henry Brinkman.]

By John Fitch, Register:

This cause is now pending before me, in order to determine and report as to the pro-priety of granting the prayer of the petition, &c. It appears by the testimony that Wil-liam R. Dills was duly elected assignee of the estate of said bankrupt on the 4th day of January, 1871; that as such assignee he came into possession of a certain house and lot belonging to the estate of said bank-rupt, situated at Stapleton, Richmond Co., New York; that said house and lot is en-cumbered by two mortgages, one for fifteen hundred dollars in favor of one F. W. Frank-lin, and one for three hundred dollars in favor of one Albert Kohnser, besides judg-ments as follows: One in favor of H. Shu-maker for ten dollars, recovered in the first district court of New York, September 14th, 1865, also one in favor of one Philip Regohn, recovered in the fourth district court, New York, for eighty-four dollars and ninety-six cents, and one in favor of one Adolph Strohn and others, recovered in the New York su-preme court on the 28th day of October, 1870, for. six hundred and fifty-six dollars and nineteen cents; that the wife of the said bankrupt swears that the mortgage for three hundred dollars has been paid, although it has not been cancelled of record; that said assignee on the first day of June, 1871, sold said house and lot at public auction, free from encumbrances, to one Louis Wolff for the sum of thirty-one hundred dollars, and the sum of three hundred and ten dollars was paid to said assignee by said Wolff on account of said sale; that said assignee sold said property free from encumbrances by advice of counsel, believing he had the right and power so to do; that after said sale the assignee was informed that he had no pow-er to sell said property free from encum-brances without a special order of this court, and therefore he did not deliver to said Louis Wolff, the purchaser, a deed of said prop-erty; that on the 6th day of March, 1870, said F. W. Franklin brought suit in the New York supreme court to foreclose said mortgage, in which suit the assignee herein was made a party; that on the 29th day of May, 1870, judgment of foreclosure and sale was entered in the New York supreme court, Kings county, in favor of said F. W. Frank-lin, which said judgment and costs amount to the sum of eighteen hundred and fifty-five dollars and sixty-one cents, besides in-terest and insurance, and in addition to which is the sheriff's fees, which amount to the sum of one hundred and fifty dollars; that M. E. Goodhart, Esq., then the attorney for the assignee herein, gave his assent in writing to the entry of said judgment of foreclosure, but the assignee swears that he gave said attorney no authority to assent to the entry of said judgment and was not

aware that he had done so, and further, that said Franklin was aware that the estate was in bankruptcy, and that he, said assignee, prior to the entry of said judgment of foreclosure, requested said Franklin to wait a few days, and he would sell said property, and out of the proceeds thereof, would pay said Franklin mortgage; that the aforesaid mortgage was made on the 22d day of April, 1865, by said bankrupt and wife to Peter S. Wandel, county treasurer of Richmond county, New York, recorded in Richmond county clerk's office in liber 42 of mortgages, pages 440, &c., April 24th, 1865; that on the 18th day of October, 1869, Webley J. Edwards, county treasurer of Richmond county assigned said mortgage to one Oliver B. Wandel, consideration one thousand five hundred dollars, which said assignment was recorded in Richmond county clerk's office in liber 61 of mortgages, pages 92, &c., December 27th, 1869; that on the 16th day of December, 1869, said Oliver B. Wandel assigned to Frederick W. Franklin the said mortgage, which was recorded in Richmond county clerk's office in liber 63 of mortgages, page 33, &c., May 18th, 1870, which said mortgage still remains in the name of said Frederick W. Franklin. That on the 14th day of June, 1871, subsequent to and in pursuance of the sale of said property to said Louis Wolff by the assignee herein, Dena Brinkman, wife of said bankrupt, executed a deed of said property to said Louis Wolff, but that said deed was not delivered to said Wolff for the reasons herein before stated, a copy of which deed is herewith submitted marked two.

The assignee claims that the proceedings heard in the foreclosure suit in the state court being after the adjudication of bankruptcy, the appointment of the assignee and the conveyance by the register to the assignee of the estate of the bankrupt is in violation of the bankrupt act and is void, the state court not having any jurisdiction in the matter. as it related to the bankruptcy.

The mortgagee claims that he had an estate in the mortgaged premises with all its incidents created long prior to the passage of the bankrupt act, and that the constitution of the United States does not confer upon congress the power to impair or interfere with such estate. That the mortgagor has only an equity of redemption in the mortgaged premises, not an estate, and this equity is all that the assignee in bankruptcy can receive by virtue of the bankrupt law. The counsel for the mortgagee does not cite any authorities to support his propositions, but argues the point in his brief upon the principle of state sovereignty and in derogation of the act of congress—the bankrupt law. Article one, section eight, of the constitution of the United States expressly confers upon congress the exclusive right "to establish a uniform rule of naturalization and uniform laws on the subject of bank-

ruptcies throughout the United States." This power congress has three times exercised, first, by the passage of the act of April 4th, 1800 [2 Stat. 19], and of August 19th, 1841 [5 Stat. 440], and of the act of March 2d, 1867 [14 Stat. 517]. By long continued practice and by repeated decisions of the supreme court of the United States it has become the settled rule of law that a continued course of congressional legislation uniformly acquiesced in for a long period of time settles the question of the power of congress to legislate and have exclusive jurisdiction of the subject of bankruptcy; and that that right, so exercised, was rightfully exercised. [Briscoe v. Bank of Commonwealth of Kentucky] 11 Pet. [36 U. S.] 317; [Wood v. U. S.] 16 Pet. [41 U. S.] 342; [M'Culloch v. Maryland] 4 Wheat. [17 U. S.] 412. And further that wherever the constitution of the United States grants power to congress to do any act or exercise any power, it must be exercised exclusively by congress. [The Moses Taylor v. Hammons] 4 Wall. [71 U. S.] 411. No state legislature can in any manner act in such cases. The subject is as fully taken from the state legislatures as if they had been prohibited to act by the constitution itself. [Prigg v. Pennsylvania] 16 Pet. [41 U. S.] 622. If the states were allowed to act, their acts would be in direct derogation of the laws of congress; thus creating a conflict of power and authority between the nation and the state, which the framers of the constitution expressly avoided by article one, section eight, of the constitution of the United States giving exclusive power over the subject matters therein enumerated to congress. Such power is exclusively vested in congress, as an exclusive jurisdiction of power is granted to congress to establish a uniform rule of naturalization and bankruptcy. It is, therefore, plain that the exercise of any power by the state courts in carrying out any provision of the bankrupt law, is both incompatible and repugnant to the constitution of the United States. It has, therefore, been uniformly held that the insolvent laws of the several states were suspended during the operation of the bankrupt law. Such suspension does not, however, work an absolute repeal. They only remain passive while the law of congress is in force. The power of congress is exclusive where the states are expressly prohibited to pass laws of a particular character. [Briscoe v. Bank of Commonwealth of Kentucky] 11 Pet. [36 U. S.] 317. True it is that the state governments are in a measure sovereign and supreme within their respective limits, and all the powers of government not delegated to the United States by the constitution nor prohibited to it by the statutes, are reserved to them respectively. Const. U. S. art. 10. The subject of bankruptcy being one of the powers expressly conferred upon congress. the federal courts alone have jurisdiction. [Houston v. Moore] 5 Wheat.

[18 U. S.] 49. By the constitution the power is conferred on the national courts, and they alone have jurisdiction of cases of bankruptcy. The state courts cannot in any manner interfere with the action of the federal courts. It is, therefore, clear that the power conferred by the general government upon the federal courts, of necessity as well as by implication, prohibits them, the state courts, from acting or taking cognizance of, judicially, any matter which, by the constitution, the federal courts have exclusive jurisdiction, and the states have no right through their judicial tribunals to act in any matter relating to bankruptcy. 1 Kent, Comm. (4th Ed.) 328, 409, 413; [Providence Bank v. Billings] 4 Pet. [29 U. S.] 563, 564; Dobbins v. Erie Co.] 16 Pet. [41 U. S.] 449; [McCulloch v. Maryland] 4 Wheat. [17 U. S.] 316; [Osborn v. Bank of U. S.] 9 Wheat. [22 U. S.] 738; [McNutt v. Bland] 2 How. [43 U. S.] 16; [Duncan v. Darst] 1 How. [42 U. S.] 301; [U. S. v. Peters] 5 Cranch [9 U. S.] 115; [Slocum v. Mayberry] 2 Wheat. [15 U. S.] 1; [Goszler v. Corporation of Georgetown] 6 Wheat. [19 U. S.] 597; [Rhode Island v. Massachusetts] 12 Pet. [37 U. S.] 751; [Cohens v. Virginia] 6 Wheat. [19 U. S.] 447; [McClung v. Silliman] Id. 598; [Bank of Augusta v. Earle] 13 Pet. [38 U. S.] 590.

It has long since been settled by the supreme court of the United States that the doctrine of national comity applies as well between the United States and the several states and territories of our Union as between the United States and other nations. The whole current of the national decisions has been that in all matters where the federal courts have paramount jurisdiction the state courts are expressly prohibited from taking cognizance of the matter. In the case of Slocum v. Mayberry, 2 Wheat. [15 U. S.] 1, it is decided that the federal courts have exclusive jurisdiction of all seizures made on land or water for breach of the laws of the United States, and that any intervention of state authority to take the thing seized from an officer of the United States and thereby obstruct the exercise of the national jurisdiction, is unlawful. The same rule of jurisdiction of the federal courts applies to the admiralty and maritime jurisdiction of the federal courts as it does to the bankruptcies and naturalizations. The ninth section of the judiciary act of 1789 (1 Stat. 76, 77) declares that the district courts shall have exclusive jurisdiction of all crimes and offences that shall be cognizable under the authority of the United States, committed within their respective districts or upon the high seas. The state of New York, on the 24th of April, 1862 (Laws 1862, c. 482), passed a law entitled, "An act to provide for the collection of demands against ships and vessels." This act was claimed by many to be in direct conflict with the constitution, and also to 1 U. S. Stat. 77, as the act of congress of 1789, commonly called the "Judiciary Act," gives to the district courts of the United States exclusive cognizance of all civil causes of admiralty and maritime jurisdiction. The constitutionality of the act of the state of New York, 24th of April, 1862, has twice been passed upon by the court of appeals of this state, namely, Bird v. The Josephine, 39 N. Y. 19, where the court held that state laws conferring jurisdiction in admiralty and maritime matters upon state courts were in conflict with the constitution and laws of the United States and therefore void; also claiming that the district courts of the United States were by the constitution and laws, vested with exclusive jurisdiction in all such cases. The case of Brookman v. Hamill, 43 N. Y. 554, is to the same effect. In the case of Sweatt v. Boston, H. & E. R. Co. [Case No. 13,684], in circuit court, Clifford, J., says: "Original jurisdiction in all matters and proceedings in bankruptcy is conferred upon the district courts, and they are authorized to hear and adjudicate upon the same according to the provisions of the bankrupt act." Pursuant to that authority the district courts may exercise original jurisdiction in all suits in equity as well as in suits at law which may or shall be brought by an assignee in bankruptcy against any person claiming an adverse interest, or by such person against the assignee touching any property or rights of property of the bankrupt, transferable to or vested in such assignee. In section one of the act it is provided that the jurisdiction of the district courts shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties; to the marshaling and disposition of the different funds and assets, so as to secure the rights of all parties and the due distribution of the assets among all the creditors, and to all acts, matters and things to be done under and by virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt and the close of the proceedings in bankruptcy.

Blatchford, J., in Re Glaser [Case No. 5,474], held "that district courts have original jurisdiction in all matters and proceedings in bankruptcy, and that jurisdiction extends to all acts, matters and things to be done under and by virtue of the bankruptcy." The jurisdiction of said courts, sitting as courts in bankruptcy, is superior and exclusive in all matters arising under the statute. The estate surrendered is placed in the custody of the court so sitting in bankruptcy, and the officer (assignee or trustee) appointed to manage it, is accountable to the court appointing him, and that court alone. No state court has jurisdiction in, or can with-

draw the property surrendered, or determine in any degree the manner of its disposition. In re Barrow [Id. 1,057]; In re Schnepf [Id. 12,471]; In re Bowie [Id. 1,728]. The commencement of proceedings in bankruptcy at once transfers to the district court' the jurisdiction over the bankrupt, his estate and all parties and questions connected therewith, and operates as a supersedeas of all process in the hands of the sheriff of a state court, and as an injunction against all other proceedings than such as may thereupon be had under the authority of the district court until the question of bankruptcy shall be disposed of. Jones v. Leach [Id. 7,475]. The filing of a petition in bankruptcy at once brings the property of the insolvent into the bankruptcy court, and places it in its custody and under its protection as fully as if actually brought into the visible presence of the court. Being in the custody of the court, no other court can, without the permission of the court in bankruptcy, interfere with it, and so to interfere is a contempt of the bankrupt court. In re Vogel [Id. 16,983]; In re People's Mail Steamship Co. [Id. 10,970]; In re Kerosene Oil Co. [Case No. 7,725; and the same case on appeal, Id. 10,206]; Brock v. Terrell [Case No. 1,914]; In re Wallace [Id. 17,094].

The court has power, on the application of the assignee or trustee, to order the sale of encumbered property, free from encumbrances, transferring the liens from the property to the fund realized from its sale. In re Stewart [Case No. 13,418]; In re Barrows [Id. 1,057]; In re McLellan [Id. 8,694]; In re Columbia Metal Works [Id. 3,039]; In re Salmons [Id. 12,268]; In re Alabama & Florida Railroad Co., 1 N. B. R. 100; Foster v. Ames [Case No. 4,965]; In re Schnepf [Id. 12,471]. "Any lien upon the property of a bankrupt, so long as the property is in the possession of the court or its officers, the assignee or trustee, can only be enforced in the district court sitting as a court of bankruptcy." In re People's Mail Steamship Co. [Id. 10,970]; Davis v. Carpenter [In re Davis, Id. 3,618]; Jones v. Leach [Id. 7,475]; In re Vogel [Id. 16,983]; In re Kerosene Oil Co. [Cases Nos. 7,725 and 10,206]; In re Lee [Lee v. Franklin Ave. German Sav. Bank, Case No. 8,188]; Foster v. Ames [Id. 4,965]; In re Rosenberg [Id. 12,055]. The title to the property of the bankrupt, immediately upon the filing of the petition, is transferred to the court, and is vested in the register to whom the case is referred, who is to keep it safely until it can be turned over to the assignee when appointed. In re Hasbrouck [Id. 6,189]. And the register may appoint a watchman or custodian to take charge of the property (In re Boget [Id. 1,599]; In re Shaffer [Id. 12,694]), and has the power to order the payment of fees and expenses incurred in the proceedings, out of the funds in the hands of the assignee (In re Lane [Id. 8,042]), and, upon the appointment of an assignee, is to convey by deed all the property of the bankrupt, of whatever name or nature, except that which is exempt by law, to the assignee. The assignee then proceeds in accordance with sections 1, 14–18, 25–28, 35, 37, 39, 42, and 48 of the bankrupt act [of March 2, 1867 (14 Stat. 517)], and others, and may commence an action or proceedings to collect the assets of the estate of the bankrupt, wherever assets are found, in any district court in the United States. The power given to an assignee "to collect the assets" is a sufficient authority and gives the right to commence proceedings to collect them in any district when a suit to collect is necessary. Goodall v. Tuttle [Case No. 5,533]. "The jurisdiction may be well enough included in the general grant of first section." Chase, C. J., in Re Alexander [Id. 160].

In making sales of real estate, the court or register can authorize the sale thereof in parcels, and may, under the direction of the court, submit any controversy arising in the settlement of the demands against the estate or debts due it, to the determination of arbitrators, &c. 2 Ben. 100 [In re Graves, Case No. 5,709]; [Bankruptcy Act] § 17. All sales of property belong to the estates of bankrupts made by holders of deeds of trust, mortgages or judgment liens, are unlawful unless made by permission of the court after due notice of such application has been given, to the assignee. In re Bigelow [Case No. 1,396]; Davis v. Carpenter [In re Davis, Id. 3,618]; In re Rosenberg [Id. 12,055]. Proceedings by a mortgagee to foreclose a mortgage on the property of the bankrupt must be taken in the United States district court, sitting as a court of bankruptcy. In re Kerosene Oil Co. [Cases Nos. 7,725 and 7,726]; In re Snedaker, 3 N. B. R. 155; Markson v. Heaney [Case No. 9,098]. That the constitution gives to congress the exclusive right to pass laws in relation to bankruptcy, naturalization and maritime law as well as taxation and revenue no one questions. It is equally clear that congress could give judicial powers to the registers in bankruptcy, creating them a special tribunal with concurrent jurisdiction in these matters with the district and circuit courts, their proceedings subject to review by said courts. Such a tribunal would be of great service to the country and a relief which the community very much need. England has a separate court in bankruptcy composed of the registrars. Such a court here, with naturalization, maritime and internal revenue jurisdiction added thereto, would greatly relieve the district and circuit courts.

The powers and duties of an assignee give him the right to sell and dispose of the bankrupt's estate, under the direction of the court, in a manner most conducive to the interest of the estate. And where the estate consists of real estate it is the duty of the assignee immediately to take possession of

such real estate, providing there is any estate of value to become possessed of. He should at once, himself, ascertain the amount of liens thereon and the validity of each lien about which there may be any doubt, or he may apply to the court for an order of reference to the register before whom the proceedings are pending, before whom all the parties in interest could be heard, in order that the rights of all the parties in interest may be substantiated and their specific liens be judicially determined. Thus, with little or no expense to the estate or parties in interest, the rights of the creditors having liens thereon recognized by the bankrupt law can be judicially ascertained, and the duties of the assignee as to such real estate determined. If it should be decided by the court that the liens on the property are greater in amount than the value of the real estate, it would not be proper for an assignee to take possession of such real estate, because good faith requires the assignee to save all the expenses possible to the estate. The assignee can then in the faithful performance of his duty give a consent to each lien creditor to proceed to the enforcement of their specific liens according to law, but without expense to the estate. It is optional, however, with the assignee which course he will pursue, as, by the bankrupt law, he may by an order of the court, sell the property free from encumbrances and distribute the avails in the order as the liens attach, after deducting the proper expenses, and the estate and creditors are bound by the action of the assignee, as he is the agent and trustee of the creditor, and acting under the order of the court and also as assignee. 2 Johns. 485; 1 Abb. N. Y. Dig. 398. The assignee takes the real estate of the bankrupt with all the rights the bankrupt had, subject to the liens thereon. 1 Paige, 620; 2 Paige, 303; 4 Paige, 64. Liens upon the property of the bankrupt while it remains in the possession of the bankrupt court can only be enforced in the district court sitting as a court of bankruptcy. In re People's Mail Steamship Co. [Case No. 10,970]; Bump, Bankr. 370, and the cases there cited.

It is not necessary for an assignee to take any proceeding whatever in regard to encumbered property, unless by so doing he can realize a net sum of money free from encumbrances for the benefit of the estate. It would be idle to go through the form of selling the property if the property be of less value than the amount of encumbrances. In re Lambert [Case No. 8,026]; In re Bowie [Id. 1,728]. In the case, In re Charles H. Wynne, United States circuit court for Virginia [Id. 18,117], Chief Justice Chase held "that no lien can be acquired or enforced by any proceeding in a state court commenced after petition is filed." Peck v. Jenness, 7 How. [48 U. S.] 612. When the assignee shall have determined for himself that the real estate is encumbered for more than its

value, when it shall have been so judicially determined that such real estate is of no value to the estate, then the question of bankruptcy as to such real estate will have been disposed of, and the exclusive jurisdiction of the United States courts as to such real estate ceases, and the jurisdiction of the state courts, which was superceded by the bankrupt act, will again attach, upon the assignees giving consent to the specific lien holders to proceed to the enforcement of their liens, and then the provisions of the bankrupt law will not apply as to priority of lien or manner of distribution between the lien creditors, who will then enforce their liens in the state courts and be subject to the state law. No person can enforce a specific lien, such as a mortgage or a judgment, in a state court while the proceedings in bankruptcy are pending and not disposed of, unless an assent thereto shall first be given by the assignee as an officer of the court. He cannot delegate such authority; an attorney cannot assent for him; he does not have to apply to the court for an order to that effect; he derives such power as assignee and trustee of the creditors of the estate from the court and from the provisions of the bankrupt law. Should such proceedings be taken in a state court they would be void and would be enjoined by the United States district court. The parties who instituted such proceedings would be liable to be proceeded against as for contempt of court. The court will also enjoin a sheriff from proceeding under an execution or decree, also a landlord from collecting rent by distraint, also proceedings on a libel in rem brought to enforce a lien against a vessel, also proceedings by mortgagees to foreclose mortgages which are specific liens upon the property of the bankrupt. It is the duty of the assignee to appear in all proceedings pending against the bankrupt in the state courts at the time of the bankruptcy wherein the estate of the bankrupt is interested, as the state courts have a right to know and be informed of the bankruptcy which affects their jurisdiction; but such appearance either by the assignee or by the attorney of an assignee does not affect the bankruptcy proceedings in the United States court, nor confer jurisdiction upon a state court in any proceedings not allowed by the bankrupt act.

In ascertaining the dividing line of the exclusive jurisdiction of the district courts over suits at law, brought by an assignee to collect a debt due an estate (other than a debt claim or demand in relation to real estate) the origin as well as the consideration of the indebtedness must be first ascertained, as the district court has exclusive jurisdiction in all cases relating to the "conflicting interest of all parties" and to all acts, matters and things to be done under and by virtue of the bankruptcy In re Glaser [Case No. 5,474]. All claims due an estate, or pay-

ments made by a bankrupt, within four months previous to the bankruptcy, which payments the assignee claims to have been made in contemplation of and in fraud of the bankrupt act, or paid with the intention of giving a preference to some creditor, the creditor having reason to suppose such payment to be a preference under the act, or made in contemplation of bankruptcy, or in any way or manner in violation of the act, should be brought in the district court. "The circuit courts have concurrent, appellate or revisatory jurisdiction with the district courts of the same district, of all suits in law or in equity which may be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee, touching any property or right of property of the bankrupt transferable to or vested in the assignee." Bump, Bankr. (4th Ed.) 206.

In this case the mortgage most certainly relates to the real estate of the bankrupt, and the surplus which must arise, and in fact, has arisen, by virtue of the sale by the assignee, must be distributed to all creditors as per the relative rights or specific liens thereon; "and no state court has jurisdiction in or can withdraw the property surrendered, or determine in any degree the manner of its disposition." In re Bininger, 38 How. Pr. 395 [In re Kingon, Case No. 7,815], and the cases there cited. In this case the state courts have no jurisdiction, as the suit would be one in relation to the bankruptcy, and hence the district court will enjoin proceedings by a mortgagee to foreclose a mortgage on the property of the bankrupt. In re Kerosene Oil Co. [Id. 7,725], and the cases heretofore cited. As a foreclosure of the mortgage in the state court is void, and no title could pass under the sale as a decree rendered in a state court, a sheriff will be enjoined from selling property, real estate, under and by virtue of a decree made by a state court after the petition has been filed. 1 N. B. R. 157 [Pennington v. Sale, Id. 10,-939], and the cases cited in Bump, Bankr. 277; In re Mallory [Id. 8,991], and cases therein cited; In re Devlin [Id. 3,841]; In re Schnepf [Id. 12,471.] It cannot be claimed that the district court and state court have concurrent jurisdiction in a case like this or that the right to maintain jurisdiction is inherent in each court, or that the court obtains jurisdiction which first exercises it or obtains possession of the subject matter of the action as in The Robert Fulton [Id. 11,890]; [Act Sept. 24, 1789] 1 Stat. 79. State courts have concurrent jurisdiction of an action by the assignee on a cause of action which occurred to the bankrupt previous to four months of the adjudication of bankruptcy on contract debts which do not relate to the bankruptcy or effect real estate, and also to debts which were not contracted in fraud of the bankruptcy and do not relate to or are affected by the bankruptcy, although contracted with-

in the four months. 5 N. B. R. 252 [Peiper v. Harmer, 8 Phila. 100]. The act of 1841 [5 Stat. 440] contained a similar clause to the bankrupt act of 1867 [14 Stat. 517], and the courts held in the same manner as to the concurrent jurisdiction of the state courts. 10 Metc. [Mass.] 583; 5 Story, Laws U. S. 2835; 7 Bush, 66; Davis v. Anderson [Case No. 3,623].

The most that can be claimed by the mortgagee, if anything, is that his proceeding in the state court has ascertained the amount due, principal and interest, on the mortgage, and that the estate is now bound thereby, as the assignee appeared by attorney in the foreclosure proceedings, but as to the question of costs made upon such proceedings it is different, such costs were unnecessary and there was no occasion for creating them, as the claim could have been determined in the bankruptcy court with little or no expense. The owner of the mortgage had record knowledge that his mortgage was the first lien upon the real estate free from dower, as the wife of the bankrupt had signed the mortgage, and that the real estate was worth much more than the amount due on the mortgage. In law, the assignee is supposed to have knowledge of his legal rights as assignee, but in this case it seems that he did not, as he should have moved the court to transfer the suit in the foreclosure case from the state to the United States courts. No act done by his attorney in the state court is binding upon the assignee in these proceedings unless this court shall hold that it binds the estate for the amount of the costs incurred in the proceedings in the state court. I hold the better view of the law to be, that as the foreclosure proceedings in the state court were unauthorized by the bankrupt law and void in all respects, except, perhaps, for finding the amount due for principal and interest on the mortgage, that the costs of the state court cannot be made a lien upon or become a charge upon the estate. If such were to be held the rule of law in such cases, it would operate as an intolerable hardship upon subsequent lien holders and the general creditors of the estate, as it would in this case. The mortgage being about fifteen hundred dollars, the costs, about four hundred dollars, adding one fourth to the amount due on the first mortgage and deducting that amount from the fund applicable to the second mortgage or else from the estate to be divided among the creditors. In a case where there were several mortgages and each of them should be foreclosed with a like bill of costs in each, the accumulation of costs would amount to a sum in the aggregate which would soon absorb the estate and deprive the creditors of a fair dividend which they might otherwise obtain. The federal courts could not, for a moment, sanction such proceedings had in the state courts, and when such proceedings are resorted to the assignee should immediately apply, when the

proceedings occur after the adjudication of bankruptcy, for an order removing the proceedings from the state to the United States district courts, a stay of proceedings, or a writ of prohibition. In the bankruptcy court the amount due on a mortgage can be determined in proceedings before the register with little or no expense to the claimant and none to the estate. Therefore, I hold that no act, either by the assignee or his attorney in this case, has fixed any liability upon the estate other than the amount due upon the mortgage for principal and interest, free from costs. The proceedings of the mortgagee being had in contravention of the bankrupt law and the established rules and practice of this court, such proceedings being taken in the state courts and after the adjudication of bankruptcy, the mortgagee having full knowledge thereof, he cannot now plead ignorance or innocence, or claim that the amount of costs are res judicata as between the assignee of the estate, the mortgagee in the foreclosure proceedings and the holder of the next mortgage, or the other creditors, as he cannot, by his own illegal act diminish the estate due to third persons by virtue of any proceedings which are void by the bankrupt law.

As to the power of this court, sitting as a court of bankruptcy, to enjoin a sheriff of a state court, or parties litigant therein from proceeding to sell property levied upon by virtue of an execution, or decree issued out of such court upon a judgment, or decree obtained therein, after an adjudication of bankruptcy, or before proceedings in bankruptcy were commenced, there cannot be any question. The authorities on that point have been uniform for years. [Colby v. Ledden] 7 How. [48 U. S.] 626; In re Reed [Case No. 11,637]; In re Jacoby [Id. 7,165]; 1 N. B. R. 65, 157 [In re Black, Case No. 1,458; Pennington v. Sale, Id. 10,939]; In re Bernstein [Case No. 1,350]; 1 N. B. R. 125 [In re Barrow, Case No. 1,057]; 2 N. B. R. 20 [Irving v. Hughes, Case No. 7,076]; 2 N. B. R. 54 [In re Lawson, Case No. 8,149]. Parties proceeding after the bankruptcy to foreclose a mortgage on the property of the bankrupt in a state court were enjoined. 2 N. B. R. 164 [In re Kerosene Oil Co., Case No. 7,725]; 4 N. B. R. 29 [In re Fuller, Case No. 5,148]; [In re Snedaker] 4 N. B. R. 43, 3 N. B. R. 155; Ex parte Eames [Case No. 4,237]; 2 Story, 131 [Ex parte Foster, Case No. 4,960]; In re Mallory [Id. 8,991], and the authorities there cited. "The object and intent of the general bankrupt law is to place the administration of the affairs of insolvent persons and corporations exclusively under the jurisdiction of the federal courts of bankruptcy; and the enactment of the general bankruptcy law now in force suspended all actions and proceedings under state insolvent laws." Perry v. Langley [Id. 11,006]; 2 N. B .R. 188 [Martin v. Berry, 37 Cal. 208]; In re Merchants' Ins. Co. [Case No. 9,441.]

I decide as a matter of law, that as the proceedings in the foreclosure suit in the state court were had after the adjudication of bankruptcy, the appointment of the assignee and the conveyance by the register to the assignee of the estate of the bankrupt were in violation of the bankrupt act and are void, as the state court could not have any jurisdiction in this matter as it related to the bankruptcy. That the injunction heretofore granted in this cause was properly granted and should be made perpetual, and further, that an order should be entered herein confirming the sale of the property in question by the assignee herein, William R. Dills, to Louis Wolff, on the 1st day of June, 1871, free from encumbrances; the assignee out of the proceeds of said sale to first satisfy the Franklin mortgage, principal, and interest, and insurance, but without costs, which were created in the foreclosure suit in the state court. I have examined all the authorities I can find upon this question and find that Judges Chase, Clifford and Field, of the supreme court of the United States hold the same view of the law, and that all the district judges also decide in the same manner, and the only opinion to the contrary is the opinion in Re Campbell [Case No. 2,349], which has not been regarded by the courts as an authority. I am fully of the opinion that the bankrupt act has been, by the authorities cited, correctly construed. The authorities being unanimous upon that point and as applicable to this case. They decide that the state court had no jurisdiction, and that the injunction was properly granted.

On the argument of the case at the district court, BLATCHFORD, District Judge, held, as to the law of the case, in accordance with the opinion of the register, but disapproved of the action of the assignee in allowing the foreclosure to proceed when he was a party to the foreclosure proceedings, up to and including a decree of notice of sale, before applying for an injunction.

[NOTE. For report of the decision in the district court, see Case No. 1,883.]

NOTE [from original report]. In re Sacchi [Id. 12,200], Woodruff, J., settles the practice in this circuit.