TERRELL *v.* THE SCHOONER B. F. WOOLSEY.

*(Circuit Court, S. D. New York.* October 23, 1880.)

1. ADMIRALTY JURISDICTION—POSSESSORY LIEN—"COMMON-LAW REMEDY" —REV. ST. § 563.—A statutory proceeding of an equitable nature, for the enforcement and foreclosure of a possessory lien, founded upon a maritime contract, is not "a common-law remedy" within the meaning of section 563 of the Revised Statutes, relating to the admiralty jurisdiction of the United States district courts.

In Admiralty. Appeal from the district court.

*Henry D. Hotchkiss,* for Hawkins.

*H. B. Kinghorn,* for Daniel H. Terrell.

BLATCHFORD, C. J. This libel was filed in the district court against the schooner B. F. Woolsey, *in rem,* for wages alleged to be due to the libellant as a mariner on board of that vessel. One Daniel H. Terrell filed a claim to the vessel, and one John P. Hawkins also filed a claim to the vessel. Each claimed a right as owner to bond the vessel and defend the suit. Daniel H. Terrell was the owner of the vessel. Hawkins claims to have acquired and displaced the title of Daniel H. Terrell by certain proceedings in a suit in the supreme court of New York. On the petition of Daniel H. Terrell, and after hearing him and Hawkins, and examining the proceedings in said suit, the district court made an order permitting Daniel H. Terrell to intervene and claim the vessel as her owner, and to defend the suit, and adjudging that Hawkins was not her owner, or entitled to appear as claimant or to defend this suit, and striking out his claim. Hawkins appealed to this court.*

*See *The Town of Pelham* v. *The Schooner B. F. Woolsey,* 3 FED. REP. 457.

The only question involved is as to the title which Hawkins acquired. In October, 1879, Hawkins brought a suit in the supreme court of New York against Daniel H. Terrell and one Whitehead. The complaint in that suit alleged that the plaintiff was a shipwright; that in August, 1879, the defendant, Daniel H. Terrell, owned the vessel and employed the plaintiff to make certain alterations and repairs on her; that for that purpose said Terrell delivered the vessel into the possession of the plaintiff, and the plaintiff performed labor on her, and furnished materials to her of the value of $869.46, which sum said Terrell promised to pay; that the vessel remains in the possession of the plaintiff, and he has a lien on her for the value of said alterations and repairs; that he has incurred expenses for wharfage and a watchman; and that the defendants have, or claim to have, some interest in the vessel; but, if any, it accrued subsequently to the plaintiff's lien. The prayer of the complaint was for a judgment "that the defendants be foreclosed of all right, title, interest, or equity of redemption in said schooner, and that said schooner may be decreed to be sold according to law; that out of the proceeds of such sale there be paid to the plaintiff the amount of his said claim, and costs, and the expense of keeping the vessel," and "that the defendant, Daniel H. Terrell, may be adjudged to pay any deficiency that may remain after the payment of said claim," and costs and expenses.

Daniel H. Terrell put in an answer raising issues for trial. Whitehead answered, raising issues, and setting up a mortgage on the vessel given to him before the plaintiff's claim accrued, and alleging that the state court had no jurisdiction of the cause of action. The suit was tried in the state court as an equity suit, before the court without a jury, and a judgment was rendered that the defendant Terrell owed the plaintiff $861.31, "for which sum the plaintiff has a lien on the schooner B. F. Woolsey, and that the plaintiff is entitled to a judgment of foreclosure and sale of the schooner B. F. Woolsey;" and that the plaintiff "recover from said defendant Terrell any deficiency which may remain after such sale;" and that the vessel be sold at public auction under the direction of a referee

whom the judgment appointed; that the referee give a specified notice of the sale by advertisement, etc., that any of the parties to the suit might purchase; that the referee execute to the purchaser a bill of sale of the vessel; that out of the proceeds, after deducting his fees, and the expenses of the sale, and the cost of keeping the vessel after the judgment and before the sale, he pay to the plaintiff a specified sum for his costs and charges in the suit, and also the sum so found due to him; that he deposit the surplus, if any, in court, and make a report of the sale, and specify any deficiency in the sufficiency of the proceeds to pay said amounts; that the defendant, Daniel H. Terrell, pay such deficiency to the plaintiff; that the plaintiff have execution therefor; that the purchaser at such sale be let into possession on production of the referee's bill of sale; "and that the defendants, and all persons claiming under them, or any or either of them, be forever barred and foreclosed of all right, title, or interest, and equity of redemption in the said schooner sold as aforesaid."

Subsequently the judgment was amended by striking out the word "referee" in all places, and inserting the word "receiver," and requiring from the receiver a bond in $1,000. The receiver sold the vessel at auction under this judgment, and Hawkins became the purchaser of her at such sale. The bill of sale of her to him by the receiver is not in the case. The advertisement of sale gave notice that the receiver would sell "all the right, title, and interest which Daniel H. Terrell and Almeron Whitehead had to or in the schooner B. F. Woolsey on the third day of November, 1879." The proceedings in the suit in the state court are sought to be upheld under the provisions of the act of the legislature of the state of New York, passed May 8, 1869, (Laws of New York of 1869, c. 738, p. 1785,) entitled "An act to provide for enforcing the liens of inn-keepers, boarding-house keepers, mechanics, workmen, or bailees upon chattel property." The statute provides as follows:

"Section 1. Any inn-keeper, boarding-house keeper, mechanic, workman, or bailee who shall have a lien upon any chattel property, may commence an action in any court hav-

ing jurisdiction of the amount of such lien for an enforcement and foreclosure thereof.

"Section 2. Such action shall proceed in all respects as civil actions in the court in which the same is commenced.

"Section 3. The judgment in such action may be the same as in other civil actions in the same court, and, in addition thereto, if in favor of the plaintiff, may fix the amount of such lien and adjudge the foreclosure of the same and the sale of the chattel property affected thereby, and specify the officer who shall make such sale, and in such case shall direct the disposition of the proceeds thereof to the payment of the amount of such lien, with the costs of the action, and the costs and expenses of such sale, and shall provide for the safe-keeping of any surplus arising thereon, and the payment thereof to the owner of such chattel property, or his assigns or representatives.

"Section 4. There shall be the same right of appeal from the judgment in such actions as in other civil actions in the court in which the same shall be commenced.

"Section 5. Nothing in this act contained shall be held or construed to affect or impair the right of any person to enforce or foreclose a lien upon chattel property in any other manner than as is herein provided."

It is enacted, by section 563 of the Revised Statutes of the United States, that the district courts of the United States shall have jurisdiction of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it, and that "such jurisdiction shall be exclusive except in the particular cases where jurisdiction of such causes °  *  *  is given to the circuit courts." No jurisdiction of any of such causes is anywhere given by statute to the circuit courts, except where the parties are citizens of different states. With this exception the jurisdiction of all civil causes of admiralty and maritime jurisdiction is in the district courts of the United States, exclusive of the state courts, unless the suit in the state court falls under the head of

"a common-law remedy, where the common law is competent to give it."

It is very clear that the contract for the alteration and repairing of the vessel, set up in the complaint in the suit in the state court as the foundation of that suit, was a maritime contract, and that any suit thereon must be a civil cause of maritime jurisdiction. *In re the Josephine,* 39 N. Y. 19.

In *Brookman* v. *Hamill,* 43 N. Y. 554, it is said of the United States statute: "This act absolutely divests the state tribunals of jurisdiction to enforce maritime claims or contracts, subject only to the proviso which saves to suitors the right in such cases to pursue in the state courts such common-law remedies as the common law is competent to give. It is impossible to escape the conclusion that any state law which attempts to provide for the enforcement of a maritime claim or contract by any but a common-law remedy infringes upon the exclusive jurisdiction of the federal courts over that class of cases."

Is the remedy given by the statute of New York such a common-law remedy, competent to be given by the common law, as the act of congress refers to? The state statute is one to enforce a lien on the property. It does not, in terms, provide for a suit against any individual, but merely for an action for the enforcement and foreclosure of the lien. But probably it intends a suit *in personam* against an individual defendant, and a money judgment against him. It then provides for an additional judgment fixing the amount of the lien and adjudging the foreclosure of the same, "and the sale of the chattel property affected thereby." It enacts that the judgment may specify the officer who shall make the sale. The proceeds of the sale are to be applied to pay the lien. It is necessarily implied that the title to the chattel is to pass by the sale, and that the court shall give, by the officer, some evidence of the passing of such title, such as a bill of sale or certificate of sale. The proceeding is essentially one to enforce and foreclose the lien of the chattel. The chattel is, indeed, not seized by process in the suit in the first in-

stance and held in custody till sale. But the suit is essentially one to sell the *res.* The court must also be held to have authority to deliver the *res* to the purchaser. Otherwise there would be a failing fully to enforce the lien for the benefit of the plaintiff.

The judgment in the suit in the state court in this case follows the state statute. It finds a sum due from the defendant to the plaintiff. It fixes the amount of the lien. It adjudges that the plaintiff is entitled to a judgment of foreclosure and sale of the vessel. It orders that the vessel be sold. It specifies the officer who is to sell it. It directs that he give a bill of sale to the purchaser. It prescribes how the proceeds of sale shall be applied. It awards a judgment against the defendant for any deficiency. It orders that the purchaser be let into possession on production of the bill of sale. It bars and forecloses forever all right, title, interest, and equity of redemption of the defendant in the vessel "sold as aforesaid." This is not a common-law remedy. The suit is not one in which the chattel is attached as the property of the defendant in the suit. The decree or judgment is like that in a suit for the foreclosure of a mortgage on land. The suit is essentially a suit in equity. It was so treated in the state court. It was tried by the court without a jury, the defendant having at the commencement of the trial asked for a jury trial and been refused it. The proceeding authorized by the state statute, and the proceeding actually had, was neither a common-law remedy, nor was it a remedy which the common law was ever held to be competent to give.

The constitution of the United States (article 3, § 1) speaks of "cases in law and equity" and "cases of admiralty and maritime jurisdiction," and the seventh amendment speaks of "suits at common law." The distinction between a common-law remedy and an equitable remedy and other remedies is thus recognized, and the same distinction obtains in the United States statute under consideration. An equitable remedy, such as the one in the present case, is not a common-law remedy, or one which the common law was ever

considered as competent to give. To authorize the institution of a suit *in personam* on a contract, with a judgment for money, and to add to it what the state statute in this case has added, is not to add a common-law remedy as respects the proceeding to enforce the lien on the chattel. It is not like a judgment for money, and an execution thereon, under which the interest of the defendant in the vessel might be seized and sold. It is a proceeding based on a prior lien on the vessel to enforce that lien by a sale of the vessel. The lien set up in the complaint in the suit in the state court is a lien claimed to have arisen from the employment of the plaintiff by the owner of the vessel to repair her, the delivery of the vessel by her owner to the plaintiff for the purpose of repairing her, the making of the repairs, and the continued possession of the vessel by the plaintiff thereafter up to the bringing of the suit. No lien by any state statute is alleged, nor any maritime lien, nor is anything alleged as to whether the home port of the vessel was in the state of New York, where the repairs were made.

The findings of fact by the court show that the lien foreclosed was held to be solely the lien so set up in the complaint. The case, therefore, is one of a maritime contract, followed by what is claimed to be a possessory lien, not a maritime lien, nor a lien created by statute. The act of 1869 does not create any lien. It refers to existing liens, and it may be doubted whether it is not limited to liens which in their nature are capable of being enforced and foreclosed by a sale of the chattel by the person holding the lien, and whether it gives to any lien any attribute which it does not otherwise possess. At common law, a lien arising out of a *locatio operis faciendi*, or a hire of labor and services, such as the one in the present case, is merely a right to retain the thing bailed until the compensation for the labor and service is paid. But the lien is one strictly personal to the person contracting to do the work or services, and the thing bailed cannot be sold or parted with by him. Story on Bailments, § 440; Cross on Lien, 47–73; Jones on Bailments, 90.

In *Peters* v. *Fleming*, 6 Meeson & Welsby, 42, one Wil-

liams delivered to the plaintiff, who was a carver and gilder, certain pictures and picture-frames, the property of Williams, to perform certain work and labor on them, and furnish certain materials for them. The plaintiff performed the work and supplied the materials, and Williams owed him therefor. The articles remained in the possession of the plaintiff under such lien, and they were taken by the sheriff on an execution sued out by the defendants against the plaintiff. The court said: "If we consider the nature of a lien, and the right which it confers, it will be evident that it cannot form the subject-matter of a sale. A lien is a personal right, which cannot be parted with, and continues only so long as the possessor holds the goods. It is clear, therefore, that the sheriff cannot sell an interest of this description, which is a mere personal interest in the goods. * * * Here the interest cannot be transferred to any other individual; it continues only so long as the holder keeps possession of the subject-matter of the lien, either by himself or his servant. Then, as the sheriff cannot sell, neither by the general rule of law can he seize; and there must, therefore, be judgment for the plaintiff."

In *Somes* v. *British Empire Shipping Co.* 8 House of Lords Cases, 338, it was held that a shipwright, who had a possessory lien on a vessel for repairs, could not, if he kept the vessel to enforce payment, add to the amount for which the lien existed a charge for keeping the vessel till the payment of the debt.

In *Mulliner* v. *Florence,* L. R. 3 Q. B. Div. 485, the lien was that of an innkeeper. The court said: "The very action of a lien is that if the person who is entitled to the lien, for his own benefit parts with the chattel over which he claims to exercise it, he is guilty of a tortious act. He must not dispose of the chattel, so as to give some one else a right of possession as against himself. The lien is the right of the creditor to retain the goods until the debt is paid."

The foregoing views apply to a common-law lien, such as the one in the present case. As there could be at common

law no sale of the chattel, there could be no common-law remedy for such sale. The common law was not competent to give a remedy to effect a sale, where no right to make a sale existed.

The contract of pawn or pledge gave a different right at common law. There there resulted, by the common law, from the contract of pledge, a right in the pledgee to sell the pledge under certain reasonable conditions on default of the pledgor to comply with his engagement. Story on Bailments, § 310; Cross on Lien, 73; Jones on Bailments, 83, note. All the cases of sales are sales under a pledge or pawn. No case is found of a sale under a lien, such as that in this case.

But even if the state legislature had enacted, or should enact, that a lien thereafter created, of the character of the lien in this case, should carry with it the right to sell the chattel in the manner in which this vessel was sold, and should declare that the remedy given for such right should be regarded as a common-law remedy, the question of the jurisdiction of the state court to entertain such a proceeding for the sale as was had in this case would not be varied in favor of such jurisdiction. The expressions "common-law remedy" and "common law," as used in the Revised Statutes of the United States, are to be understood in the sense in which those words were understood in 1789, when the statute in question was first enacted, it being part of section 9 of the act of September 24, 1789, (1 U. S. St. at Large, 76.) Referring to that section, it is said by the supreme court, in *The Hine* v. *Trevor*, 4 Wallace, 571: "It could not have been the intention of Congress, by the exception in that section, to give the suitor all such remedies as might be afterwards enacted by state statutes, for this would have enabled the state to make the jurisdiction of their courts concurrent in all cases by simply providing a statutory remedy for all cases. Thus the exclusive jurisdiction of the federal courts would be defeated."

It results that the decree of the district court was cor-

rect, and that a decree must be entered in this court in affirmance thereof, and to the same effect, with the costs of this court to the appellees against the appellant.